**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leonard Bobby ORTEGA,
Defendant–Appellant.**

No. 87–6265
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1988.

---

* District Judge of the Western District of Louisiana, sitting by designation.

** This appeal is decided by a quorum, Judge Hill having died since the issuance of our earlier opinion. 28 U.S.C. § 46(d).

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, James R. Gough, Jr., Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

KING, Circuit Judge:

Defendant Leonard Bobby Ortega ("Ortega") appeals his conviction for pos-

session of a firearm by a convicted felon in violation of 18 U.S.C.A.App. § 1202(a)(1). Ortega seeks a new trial and vacation of the sentence imposed by the district court.

## I.

On September 24, 1986, law enforcement officers who had been looking for a suspect in a red car responded to a report by Investigator James Page of the Hidalgo County Sheriff's Office that Page had observed a red car at a trailer near the sheriff's office in Edinburg, Texas. The officers converged at the scene. As the officers were about to approach the trailer to inquire about the red car, they saw the suspect car turn onto the dirt road that ran by the trailer and drive past them. The officers followed the car until it stopped and then saw Ortega get out of the passenger side. The officers pulled up behind the car, got out, and approached Ortega. Investigator Rogers of the McAllen Police Department testified that he saw Ortega pull a gun from his waistline and crouch down. Rogers stated that he called out to the other officers, "he has got a gun," and then saw Ortega throw the gun under the car. Ortega was arrested, and the officers recovered a Llama .380 caliber semiautomatic revolver from underneath the car.

Ortega was charged in a one-count indictment with violating 18 U.S.C.A.App. § 1202(a)(1) by "knowingly and unlawfully possessing, in commerce, and affecting commerce, a firearm," after having been convicted of three felonies.[1] The case was

tried on November 3, 1987, in the District Court for the Southern District of Texas, and Ortega was convicted. On December 9, 1987, Ortega was sentenced to seven years imprisonment. Ortega filed a notice of appeal the same day.

On January 4, 1988, while the appeal was pending, the Government filed a motion to resentence Ortega because § 1202(a)(1) provides that a defendant who has three previous convictions "shall be ... imprisoned not less than fifteen years." On March 2, 1988 Ortega was resentenced to the statutorily provided minimum of fifteen years. Ortega filed a second notice of appeal on March 9, 1988.

Ortega raises three issues on appeal. First, Ortega asserts that the district court erred in instructing the jury on the theory of constructive possession of the firearm when no evidence was presented at trial to support that theory. Second, Ortega argues that the district court failed to instruct the jury on all elements of the offense. Third, Ortega maintains that the district court did not have jurisdiction, after the notice of appeal was filed, to correct his sentence.

## II.

### A. Did the Jury Instruction on Constructive Possession Constitute Plain Error?

Ortega contends first that the district court erred in instructing the jury on the theory of constructive possession.[2] A

---

**1.** Section 1202(a) provides in relevant part:
Any person who—
    (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ...
    ....
and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

**2.** The judge instructed the jury that:
    Constructive possession is also recognized. For example, you can send someone from Harlingen, Texas, to go across the border to go get something for you and you don't have actual possession of that. But if you exercise dominion and control over that thing that you sent them to go get you, you are in constructive possession. And the law charges you with possession of that particular matter so long as you have dominion or control. You don't have to be in actual possession. So long as you have both the power and intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, it is constructive possession.

judge may not instruct the jury on a charge that is not supported by evidence. *United States v. Blevins,* 555 F.2d 1236, 1240 (5th Cir.1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978); *United States v. James,* 819 F.2d 674, 675 (6th Cir.1987); *United States v. McLister,* 608 F.2d 785, 791 (9th Cir.1979). The Government concedes that no evidence was presented to support the theory that Ortega was in constructive possession of the gun. The Government's case was based solely on the theory that Ortega was in actual possession of the weapon. We therefore agree that the district court erred in instructing the jury on the constructive possession theory.

■ However, since Ortega did not object to the instruction at trial, the faulty instruction will not be grounds for reversal unless it rises to the level of plain error. Fed.R.Crim.P. 52(b); *United States v. Graves,* 669 F.2d 964, 971 (5th Cir.1982). The plain-error doctrine of Rule 52(b) permits us "to correct only particularly egregious errors ... that seriously affect the fairness, integrity, or public reputation of judicial proceedings" and result in a miscarriage of justice. *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1984) (citations omitted); *accord United States v. Hernandez–Palacios,* 838 F.2d 1346, 1350–51 (5th Cir.1988); *United States v. Welch,* 810 F.2d 485, 487 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987); *Graves,* 669 F.2d at 971.

■ In determining whether a faulty jury instruction rises to the level of plain error, we do not examine the instruction in a vacuum. Rather,

> We review claimed deficiencies in a jury charge by looking to the entire charge as well as the arguments made to the jury. Our inquiry is whether in the context of the true trial scene the jury was given incorrect instructions. This is a common sense approach that recognizes that the jury charge does not stand alone for separate examination; that the charge is part of a larger picture of what the jury was told.

*United States v. Chagra,* 807 F.2d 398, 402 (5th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 106, 98 L.Ed.2d 66 (1987). Looking at the instruction in the context of the trial as a whole, we conclude that the erroneous instruction did not constitute plain error.

Ortega relies on *United States v. James,* a Sixth Circuit case which also involved an erroneous jury instruction on constructive possession of a firearm. In *James,* the Sixth Circuit concluded that the instruction was not harmless error. In that case, the jury had been presented with conflicting testimony regarding the defendant's actual possession of the gun. While the police officers testified that they had seen the defendant holding the gun, the defendant took the stand and "flatly contradicted the officers' testimony." 819 F.2d at 676. The Sixth Circuit noted that the jury appeared to have difficulty resolving the conflicting testimony—the jury interrupted its deliberations to ask the court whether it was necessary to find that the defendant had actually been holding the gun. The court then instructed the jury on the theories of actual and constructive possession. A short time later, the jury returned a guilty verdict. The Sixth Circuit concluded that under the circumstances, it was likely that the jury relied on the erroneous constructive possession instruction in finding that the defendant had been in possession of the gun. *Id.*

Ortega argues that the jury in his case was similarly confronted with conflicting evidence, and that the erroneous instruction permitted the jury to convict him without deciding conclusively whether he was in actual possession of the gun.

We believe that *James* is distinguishable. No evidence was presented to contradict Rogers' testimony that he saw Ortega holding the gun. While defense counsel tried to establish doubt that the object Rogers saw was a gun, Rogers asserted persistently that he had seen Ortega draw a gun. Rogers' testimony was corroborated by Officer Guerrero who testified that he heard Rogers yell "something to the effect, 'watch it, he has got a gun.'"

We agree with the Government that this case is more similar to *United States v. McCoy* in which the Seventh Circuit found an erroneous constructive possession instruction harmless beyond a reasonable doubt. 767 F.2d 395, 398 (7th Cir.1985). In *McCoy*, an officer testified that he had found the gun in the defendant's waistband. While no other officers actually saw the gun, the court found that the arresting officer's testimony was corroborated by that of other officers who knew that a gun had been found during the arrest. *Id.* In *McCoy*, as here, the defense presented no contradictory evidence. *Id.* at 397.

This case is also similar to *McCoy* in that there is no evidence that the jury was confused by the erroneous instruction. As in *McCoy*, "the Government's position throughout the trial ... was that [Ortega] was in actual possession of the firearm." *Id.* at 398. In his opening argument, the prosecutor told the jury that it would hear testimony that "one of the officers saw [Ortega] pull a weapon from his belt." Similarly, in his closing argument, the prosecutor explained the different theories of possession but stated "in this case I believe what we have is actual, sole, possession." The prosecutor then reviewed Rogers' testimony that he had actually seen the defendant draw a weapon.

Given the Government's consistent adherence to a theory of actual possession, and the uncontroverted evidence supporting that theory, we cannot conclude that the constructive possession instruction constituted plain error. Considering the erroneous instruction in the context of the trial as a whole, we conclude instead that the "jury undoubtedly would have convicted the defendant of actual possession." *McCoy*, 767 F.2d at 397.

**B. Did the District Court Fail to Instruct the Jury on the Essential Elements of the Crime?**

Defendant next argues that the trial court erred in failing to instruct the jury that it had to find beyond a reasonable doubt that the defendant had three prior convictions for robbery or burglary.

■ This court held in *United States v. Davis*, 801 F.2d 754 (5th Cir.1986), that § 1202(a)(1) created a new federal offense and was not merely a sentence-enhancement provision.[3] Under *Davis* then, § 1202(a)(1) was construed to establish an offense consisting of two elements. The Government had to prove (1) that the defendant received, possessed or transported a firearm in or affecting interstate commerce and (2) that the defendant had three previous convictions for robbery or burgla-

---

3. *Davis* was rejected by most other circuits, and has since been superseded by statute. *See United States v. Pirovolos*, 844 F.2d 415 (7th Cir. 1988).

In 1986, Congress repealed § 1202, and reenacted the relevant provisions as 18 U.S.C. § 921 et seq. As part of the revision and reorganization of the statute, Congress separated the provisions relating to offenses and penalties. Congress thus clarified that multiple prior convictions are not an element of the offense that must be found by the jury, but are instead to be considered by the court in setting the defendant's sentence. Now, the underlying offense is defined as possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). Section 924(e)(1) which prescribes the penalties for violation of § 922(g) provides that "a person who violates § 922(g) and has three previous convictions ... shall be fined not less than $25,000 and imprisoned not less than fifteen years."

However, the repeal and amendment of § 1202 was not effective until November of 1987, more than a year after Ortega's arrest and more than two months after his indictment.

In *United States v. Holley*, we held that when Congress set the effective date for the repeal and amendment of a statute 180 days after its enactment, the repeal and amendment were not intended to apply to pending cases. 818 F.2d 351, 353 (5th Cir.1987). We therefore found that the defendant's conduct, which occurred prior to the effective date of repeal, was properly governed by the prior law. *Id.* at 352.

We further held that even when an amendment to a statute *appears* to correct a faulty interpretation of the statute by the courts, we are not free, in a case governed by the law as it existed prior to the amendment, to annul the earlier interpretation of the statute. *Id.* at 353. Although we were referring in *Holley* to the Supreme Court's interpretation of the statute, it is equally well-established that a panel of this court may not overrule an earlier decision of this court. *E.g., Penry v. Lynaugh*, 832 F.2d 915, 926 (5th Cir.1987), *cert. granted*, — U.S. —, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). Thus, *Davis*, which interprets § 1202 in its original form, still controls this case.

ry, or both. 801 F.2d at 755; 18 U.S.C.A. App. § 1202(a)(1).

■ Ortega asserts that the jury instruction was erroneous because it simply referred to the indictment, rather than explicitly stating that the Government had to prove all three convictions, and that the three convictions had to be for robbery or burglary or both.[4] Again, Ortega did not object to the instruction at trial, nor did he propose any instructions of his own.[5] Our analysis is therefore limited once again to determining whether the district court's instructions constituted plain error. *Graves*, 669 F.2d at 971. Looking at the instructions as a whole, in the "true trial context," we conclude that the disputed instruction was not plain error. *Chagra*, 807 F.2d at 402.

■ The record does disclose some confusion regarding the elements of this offense. At the beginning of the trial, defense counsel objected to the prosecutor's reference in opening argument to Ortega's prior convictions. In a bench discussion, defense counsel argued that "the enhancement sections of this indictment are for the Court's consideration. Any information to the jury regarding that I think is prejudicial to my client." The judge responded that the Government had only to prove one of the felony convictions and the court would consider the others in order to determine whether Ortega's sentence would be enhanced. Despite this initial holding, the trial did not proceed on the theory that the Government had only to prove one of the convictions, and the jury was never so instructed.[6]

The prosecutor presented evidence of all three prior convictions in the form of fingerprint records, known as "pen packages," which are made in connection with each criminal case. A McAllen police officer who worked as a "latent print examiner" testified that the fingerprints in each of the three pen packages were those of Ortega. In closing argument, the prosecutor referred to the three previous felony convictions alleged in the indictment, and to the evidence introduced to establish each of the convictions.[7] On the other hand, defense counsel, in his closing argument, conceded that Ortega had a record and never directly challenged the Government's evidence of the three previous convictions. He focused instead on the possession element.

While the jury instructions did not enumerate the three prior convictions, the court did instruct the jury that it had to find "that the defendant, before he possessed the firearm, had been convicted of the offenses alleged in the indictment." Moreover, earlier in the instruction, the court stated that in the indictment, "the grand jury alleges that the defendant, having been convicted of *three felony offenses*,

4. The disputed instruction reads as follows:
   What do you have before you? All right. Before you can find the defendant guilty of the charge as alleged in the indictment, you must find necessary things that I am going to now outline to you beyond a reasonable doubt.
   First, that he knowingly possessed the firearm which had been placed in commerce or affected commerce; that he knowingly possessed the firearm in question, all right, that had been placed in commerce or affects commerce, from one country to another, from one State to another. That he had possession of the firearm in question. I am going to define possession for you in just a moment.
   In addition to that, that the defendant, before he possessed the firearm, had been convicted of the offenses alleged in the indictment, which are all felony offenses under the laws of the State of Texas.

5. Defense counsel suggested that "maybe" an instruction on lesser included offenses should be given, but did not formally request that instruction, or object to the instructions that were given.

6. The court appeared to be unsure whether § 1202(a)(1) should be treated as an enhancement statute or as a separate offense. At the close of the trial, the judge stated that the government had filed a motion to enhance, which would be automatic if the jury returned a verdict of guilty "because the jury has been given three convictions as part of their verdict."
   Under *Davis*, the trial proceeded properly. *Davis* requires that the jury, rather than the court, find that the defendant has three prior convictions.

7. Ortega asserts that the prosecutor suggested to the jury that they had only to find that Ortega was a convicted felon. Given that the prosecutor went on to discuss all three of the convictions, we think Ortega takes this comment out of context.

had in his possession a firearm which traveled in interstate commerce." (emphasis added).

■ It is plain error for a judge to fail to instruct the jury on all the essential elements of a crime, even though such an instruction is not requested. *United States v. Musgrave,* 444 F.2d 755, 764 (5th Cir.1971); *see also Cabana v. Bullock,* 474 U.S. 376, 384, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986) ("[A] jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof."). The judge in this case did not, however, omit from the instruction any essential element of the crime. *Cf. Musgrave,* 444 F.2d at 764 (court failed to instruct jury on element of intent to defraud and on the element of identifying the entity defrauded). At most, the instruction, standing alone, was not as clear as it could have been. We agree that it would have been preferable for the judge to enumerate the convictions alleged in the indictment. However, looking at the entire instruction in the context of the trial as a whole, we reject Ortega's contention that the jury could have believed that it did not have to find that the defendant was convicted of each of the three offenses alleged in the indictment.[8] *See United States v.*

*Blankenship,* 746 F.2d 233, 240 (5th Cir. 1984). Evidence regarding each of the convictions was presented at trial, and the prosecutor referred to all three convictions in closing argument. While the judge did not enumerate the convictions alleged in the indictment, he did make it clear that the jury had to find beyond a reasonable doubt that the defendant had been convicted of all three of the offenses alleged in the indictment.

Ortega raises a further argument on this issue. While conceding that this panel is bound by *Davis,* Ortega contends that "[s]hould this court ultimately retreat from its decision in *Davis,*" he is entitled to a new trial because the admission of evidence regarding his prior convictions would have been improper and prejudicial. Because we hold that *Davis* controls this case,[9] we do not reach the issue whether admission of Ortega's three prior convictions would be harmless error if *Davis* were *not* controlling.[10]

## C. Did the District Court have Jurisdiction to Correct Defendant's Sentence while an Appeal was Pending?

■ Finally, Ortega contends that because an appeal of the conviction was pend-

8. Ortega argues that the error could not be harmless because defense counsel "repeatedly contested the government's proof" of the prior convictions. This argument is singularly unpersuasive. The government's proof of all three convictions consisted of pen packages and defense counsel contested the proof of all of the convictions on essentially the same grounds, without singling out any particular conviction as lacking the necessary proof. The jury would therefore have found all or none of the government's evidence persuasive. There is absolutely no basis for believing that the jury could have found that the defendant had been convicted of one of the prior offenses, but not the others.

9. The repeal of § 1202, and the enactment of its replacement, § 921 et seq, make reconsideration of *Davis* unnecessary—unless this court decides that *Davis* should be overruled for the benefit of defendants whose cases were decided before the repeal took effect.

10. Ortega notes that the Seventh Circuit confronted this issue in *Pirovolos.* In the absence of any guiding authority from the Seventh Circuit, the district court had been forced to choose between two irreconcilable interpretations of the statute adopted by different circuits. *Piro-*

*volos,* 844 F.2d at 419–20. The district court relied on *Davis* and therefore admitted evidence of the defendant's three prior convictions. The Seventh Circuit ultimately rejected *Davis,* reasoning that the subsequent statutory revisions made clear that other circuits had been correct to construe § 1202(a)(1) as a sentence-enhancement provision. *Id.* at 420. The Seventh Circuit found that the district court had therefore erred in admitting evidence of the defendant's prior convictions. The court concluded, however, that the error was harmless because (1) the statute would still require the jury to find that the defendant was a convicted felon, and (2) the evidence presented at trial served only to establish the prior convictions: "No potentially damaging details of those offenses reached the jury." *Id.* at 421.

While we do not endorse the Seventh Circuit's harmless error analysis, we note that the evidence of Ortega's prior convictions consisted solely of the pen packages. Thus, as in *Pirovolos,* no damaging details of the offenses reached the jury. The Seventh Circuit's decision is therefore not particularly helpful to Ortega's argument.

ing, the district court did not have jurisdiction to correct his sentence from the seven years originally imposed to the fifteen years prescribed by the statute.[11] We disagree.

Ortega relies on *United States v. Garrett*, 583 F.2d 1381, 1391 (5th Cir.1978), and *Welsh v. United States*, 404 F.2d 333 (5th Cir.1968), in which we held that a district court could not correct a sentence once a notice of appeal was filed. Both of those decisions rested on the principle that a notice of appeal automatically divests the trial court of jurisdiction.

That principle, however, was explicitly rejected in *United States v. Hitchmon*, 602 F.2d 689 (5th Cir.1979) (en banc), and *United States v. Dunbar*, 611 F.2d 985, 987 (5th Cir.) (en banc), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). In those cases, we recognized that rigid application of the divestiture of jurisdiction rule is not desirable.

The divestiture of jurisdiction rule is a judicially created prudential principle "designed to avoid the confusion and waste that might flow from putting the same issues before two courts at the same time." 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 203.11 at 3–44 n. 1 (1987 & Supp. 1988). The principle should not be employed formalistically "to defeat its purposes, nor to induce needless paper shuffling." *Id.; see also Dunbar*, 611 F.2d at 988 (Rigid application of the divestiture of jurisdiction rule may "inhibit[ ] the smooth and efficient functioning of the judicial process.") (quoting *Hitchmon*, 602 F.2d at 694).

If we were to hold that the district court did not have jurisdiction to correct Ortega's sentence, we would have to remand the case to the district court to do what it has already done—that is, to increase Ortega's seven-year sentence to the fifteen-year minimum required by law. This would be precisely the type of formalistic application of the divestiture of jurisdiction rule that commentators have criticized, and that we properly rejected in *Dunbar* and *Hitchmon*.[12]

In order to avoid applying the divestiture of jurisdiction rule in a fashion inconsistent with its purposes, we recognized in *Dunbar* that "a decision whether jurisdiction exists in a trial or appellate court or both, can be the product of reasoned choice." *Id.* at 987 (quoting *Hitchmon*, 587 F.2d 1357, 1362–63 (5th Cir.1979) (panel opinion) (Higginbotham, J., concurring)). We are confronted here, as in *Dunbar*, with the "need for such a reasoned choice." *Id.* at 988.

In *Dunbar*, we considered the competing concerns of allowing a case to proceed to trial in violation of a defendant's constitutional right not to be subjected to double jeopardy and the risk on the other hand that defendants would use frivolous double jeopardy motions to "unilaterally obtain a trial continuance at *any* time prior to trial." *Id.* We concluded that these competing concerns would be best accomodated by implementing a theory of dual jurisdiction. *Id.* at 989.

■■■ The implications of allowing a district court to correct an illegal sentence pursuant to Federal Rule of Criminal Procedure 35(a) are less severe on both sides. Postponing consideration of a Rule 35(a) motion would not disrupt the district court's proceedings as severely as postponing a trial at the last minute. On the other

---

**11.** Federal Rule of Criminal Procedure 35(a) provides for the correction of illegal sentences. The Rule was completely revised in 1984, but the new Rule applies only to offenses committed after November 1, 1987. Because Ortega's offense was committed in September of 1986, the old Rule 35(a) applies to this case. The old Rule 35(a) provides that "[t]he court may correct an illegal sentence at any time." Despite the broad language, it is of course necessary that the district court have jurisdiction over the case in order to correct a sentence.

**12.** *See* 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 203.11 at 3–52–54 (criticizing panel decision in *Hitchmon* as "ritualistic" application of transfer of jurisdiction rule). The panel in *Hitchmon* held that the district court had not properly dismissed a pending appeal before proceeding with a new trial and remanded the case for a *third* trial. 587 F.2d 1357, *rev'd en banc*, 602 F.2d 689 (5th Cir.1979).

hand, no constitutional right of the defendant would be infringed by correcting a sentence that would later be vacated if the defendant's appeal of the conviction was successful.[13] In fact, correcting an illegal sentence as soon as possible would *reduce* the risk of violating the defendant's constitutional rights. *See Breest v. Helgemoe,* 579 F.2d 95, 101 (1st Cir.) (suggesting possible due process limitation on time to correct even a statutorily invalid sentence), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978).

As in *Dunbar,* we conclude that these concerns militate against a rigid application of the divestiture of jurisdiction rule. We are not alone in deciding that a district court may, under the old Rule 35(a), correct an illegal sentence while an appeal is pending. In *Doyle v. United States,* 721 F.2d 1195 (9th Cir.1983), the Ninth Circuit applied the same principles we recognized in *Dunbar* and *Hitchmon* to its consideration of this very issue.[14]

In *Doyle,* the defendant had been given overlapping sentences for armed robbery and use of a firearm in the commission of a felony. The Supreme Court subsequently held that such overlapping sentences were illegal. The district court then vacated the illegal sentence and resentenced the defendant for armed robbery alone, as required by law. 721 F.2d at 1197.

Similarly, Ortega's original seven-year sentence was illegal in that it was less than the minimum sentence prescribed by § 1202(a)(1) for defendants who have three prior convictions. The trial judge noted himself that the defendant would automatically be subject to an "enhanced" sentence because the jury had been required to find as part of its verdict that the defendant had three prior convictions. As in *Doyle,*

the original sentence was clearly illegal: "There was no uncertainty about what the trial court would do under Rule 35(a) *or* about what this court would do on appeal." *Id.* at 1198. We agree with the Ninth Circuit that under the circumstances, "[a]llowing correction by the trial court could avoid confusion and waste." *Id.*

In holding that the district court had jurisdiction to correct Ortega's sentence, we do not endorse a broad expansion of the "dual jurisdiction" theory. While we have rejected formalistic application of the divestiture of jurisdiction rule, we have also recognized the need to avoid jurisdictional chaos.

In *Dunbar,* we held that the district court had not erred in proceeding to trial while a frivolous double jeopardy motion was pending in the court of appeals. 611 F.2d at 988. However, we set forth a process to apply in future cases which would make clear the allocation of jurisdiction between the district court and the court of appeals. We provided that district courts are to make an initial determination whether a double jeopardy motion is frivolous or not. If the district court finds the motion to be frivolous, it will retain jurisdiction over the case while the appeal is pending. If, however, the motion is not frivolous, "the trial cannot proceed until a determination is made of the merits of an appeal." *Id.* at 988.

Similarly, while the Ninth Circuit held in *Doyle* that the district court had jurisdiction to correct the defendant's illegal sentence while an appeal was pending, the court recognized the need to make clear the allocation of jurisdiction in future cases involving this situation. 721 F.2d at 1198. We suggest, as the Ninth Circuit did, that in order to clearly establish the district

---

**13.** Because the Double Jeopardy Clause "is a guarantee against twice being put to *trial* for the same offense," the defendant's constitutional rights may be abridged simply by allowing the district court to proceed. *Dunbar,* 611 F.2d at 987 (quoting *Abney v. United States,* 431 U.S. 651, 660–61, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977)). In contrast, there is no double jeopardy violation in correcting an illegal sentence, even after the defendant has begun to serve the sentence. *Llerena v. United States,* 508 F.2d 78 (5th Cir.1975).

**14.** *See also United States v. Schiffer,* 351 F.2d 91, 96 (6th Cir.1965) (district court had jurisdiction to correct illegal sentence while appeal was pending), *cert. denied,* 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966); *cf. United States v. Hill,* 447 F.2d 817, 819 (7th Cir.1971) (district court did *not* have jurisdiction to correct illegal sentence while appeal was pending).

**336**

court's jurisdiction, parties in future cases should move the court of appeals to remand the case to the district court for resentencing.

We also note that this situation is not likely to be replicated in the future. Rule 35(a) has been revised so that with respect to all crimes committed after November 1, 1987, a district court may correct a sentence only on remand from an appellate court. Fed.R.Crim.P. 35(a); 3 C. Wright, *Federal Practice & Procedure* § 581 at 77 (Supp.1988). Our decision today will therefore apply only to the few cases to which the old Rule 35(a) applies.

### III.

We hold (1) that while the district court erred in instructing the jury on the theory of constructive possession, the faulty instruction did not rise to the level of plain error, (2) the district court did not fail to instruct the jury as to the essential elements of the crime, and (3) the district court had jurisdiction to correct the illegal seven-year sentence to conform to the fifteen-year minimum required by § 1202(a)(1).

The conviction and sentence are therefore AFFIRMED.