981 F.2d 1252
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Valentine Chukwuemeka NNANI, a/k/a Tony Best, a/k/a James
Douglas, Defendant-Appellant.
 No. 91-5180.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: December 21, 1992
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CR-91-10)
 ARGUED: Sidney P. Jessup, STRATAS & WEATHERS, Raleigh, North Carolina, for Appellant.
 Robert Daniel Boyce, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 ON BRIEF: Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 Affirmed.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Valentine Chukwuemeka Nnani appeals his jury convictions and sentence for: (1) conspiracy to possess with intent to distribute heroin, resulting in death or serious bodily injury, 21 U.S.C.A. §§ 841(a)(1) & (b)(1)(C), 846 (West 1981 & Supp. 1992); (2) distribution of heroin resulting in death or serious bodily injury, 21 U.S.C.A. §§ 841(a)(1) & (b)(1)(C); (3) possession with intent to distribute heroin, 21 U.S.C.A. §§ 841(a)(1) & (b)(1)(C); and (4) attempt to possess with intent to distribute marijuana, 21 U.S.C.A.ss 841(a)(1) & (b)(1)(D), 846 (West 1981 & Supp. 1992). Nnani contends that the evidence was insufficient to support his convictions on two of the four charges: possession with intent to distribute heroin and attempt to possess with intent to distribute marijuana. He also urges that his base offense level should not have been determined under § 2D1.1(a)(2) of the Sentencing Guidelines. United States Sentencing Commission, Guidelines Manual (Nov. 1991). Finally, Nnani contends that § 2D1.1(a)(2) violates due process as applied in this case. Finding no error, we affirm.
 
 
 2
 * In May 1990, a parcel addressed to Howard Vincent at 705 Navaho Drive Apt. 201, Raleigh, North Carolina, broke open on one of the conveyer belts in the Raleigh Post Office. Inside the parcel was a hollowed-out book containing marijuana. Posing as a letter carrier, Postal Inspector Charles Thompson delivered the package the next day, May 14, 1990. Florence Nnani, Valentine Nnani's sister-in-law, answered the door, identified the apartment as the Vincent residence, and accepted the package.
 
 
 3
 Shortly thereafter and pursuant to a search warrant, Thompson and other postal inspectors searched the residence. On top of an entertainment unit they discovered a box addressed to Valentine Nnani. Inside the box, the inspectors found a film canister containing a rubber balloon holding 8.9 grams of heroin, 90% pure. They also found various personal items of Valentine Nnani in the box.[1] Elsewhere in the apartment, the inspectors found several letters addressed to Valentine Nnani, several bills, the envelope from Nnani's income tax return, and more hollowed-out books.
 
 
 4
 Three days after the search, an envelope addressed to Doctor Bundy Howell and containing 37 grams of marijuana was delivered to 705 Navaho Drive Apt. 201. Within the next two weeks, hollowedout books containing marijuana addressed to Thomas Henry, Reverend David Martins, and James Douglas were all delivered to this same apartment.
 
 
 5
 At trial, Florence Nnani testified that, although her brother-in-law, Valentine Nnani, lived with his ex-wife, he visited the Navaho Drive apartment almost daily, kept his things there, and received his mail there. She also stated that she often received packages with the names of people who didn't live in the apartment. When her husband, Anthony Nnani, returned and her brother-in-law (Valentine) came by, they would retreat to another room and discuss the packages outside of her presence. Florence Nnani confirmed that the box where the heroin was found belonged to Valentine Nnani and that he was the only person who ever used the box.
 
 
 6
 Dennis Bryant, superintendent of the Brentwood Post Office, Raleigh, North Carolina, testified at trial. He produced a change of address form on file with the post office indicating that Valentine Nnani changed his mailing address to 705 Navaho Drive Apt. 201 on May 8, 1989.
 
 
 7
 In addition, April Ayalogu, Sonia Taylor, and Regina Massenburg testified at trial that Valentine Nnani gave them heroin to distribute. All three women testified pursuant to a plea agreement. Ayalogu testified that Nnani expected them to sell the drugs and return two thousand dollars. She said Nnani told her that he had brought the drugs from Nigeria by swallowing them and then passing them by taking Ex-Lax. Florence Nnani had previously testified that Valentine Nnani travelled to Nigeria once or twice a year. Ayalogu also testified that Nnani had previously given her marijuana that had been packaged in a hollowed-out book.
 
 
 8
 Sonia Taylor testified that they thought the drug Nnani had given them was cocaine. After receiving the drugs from Nnani, they went to the Cameron Village area in Raleigh where they sold some of the "cocaine" to several different individuals. Later that night, they returned to their hotel room where Taylor tried some of the drugs and got violently ill. Regina Massenburg, who was a heroin user, tried some of the drugs and concluded it was heroin, not cocaine.
 
 
 9
 Taylor testified that the women learned from the news on television the next morning that some people had overdosed the night before. Massenburg's testimony indicated that they had learned something was wrong with the drugs the previous night when they got a phone call telling them someone had died and the police were looking for them. In any case, the women decided to leave Durham that morning. Before leaving, they went to a place referred to as"the dorms" and sold the heroin. Taylor's testimony indicates that at this point the drug was sold as heroin. Several people later overdosed from the heroin. Assuming Taylor's testimony was correct, it appears that neither the women nor the persons buying the heroin realized that the drug was 90% pure.
 
 
 10
 The jury convicted Nnani on all counts. A special verdict form was used, and the jury specifically found that death or serious bodily injury resulted from the use of the heroin distributed to the three women by Nnani. Nnani was sentenced to 264 months on the first two counts, 240 months on the third count, and sixty months on the fourth count, the terms to run concurrently. His base offense level on the first two counts was determined under § 2D1.1(a)(2) because death resulted from the use of the heroin he had distributed. Nnani now appeals.
 
 II
 
 11
 Nnani challenges the sufficiency of evidence on both the count for possession with intent to distribute heroin and the count for attempt to possess with intent to distribute marijuana.
 
 
 12
 We review the sufficiency of the evidence under the familiar standard of Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979), which inquires whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt," and requires us in applying the standard to construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced.
 
 
 13
 United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991).
 
 
 14
 Nnani argues that there was insufficient evidence to show that he actually or constructively possessed marijuana. Nnani was convicted of attempted possession of marijuana with intent to distribute the drug. Possession of marijuana is not an element of this offense. The evidence readily supports Nnani's conviction on this count.
 
 
 15
 Florence Nnani's testimony established a continuing pattern of drug deliveries to fictitious names at her apartment. From her testimony regarding the behavior of Valentine Nnani and of her husband, the jury could have inferred that Nnani knew these shipments were arriving. Moreover, given Nnani's knowledge and the continuing arrival of packages, the jury could have inferred that Nnani had made arrangements for the arrival of the packages. These arrangements constitute an attempt to possess the marijuana. The intent to distribute the marijuana may be inferred from Ayalogu's testimony that Nnani had previously given her marijuana from a hollowed-out book. Therefore, substantial evidence supports Nnani's conviction on this count.
 
 
 16
 On the charge of possession with intent to distribute heroin, drugs were found in a box that Florence Nnani identified as belonging to Valentine Nnani. The contents of the box further indicated that it belonged to Valentine Nnani. Intent to distribute the drugs could have been inferred from the testimony of April Ayalogu, Sonia Taylor, and Regina Massenburg that Nnani had previously given heroin to them.[2] Substantial evidence thus supports Nnani's conviction on this count as well.
 
 III
 
 17
 2934 100 1 Nnani's base offense level was determined pursuant to § 2D1.1(a)(2) of the Sentencing Guidelines, which applies "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C) ... and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." Nnani urges that the district court erred in applying this guideline because the deaths in this case were not a foreseeable consequence of his distributing the drugs to the three women. Nnani's argument is that the women's actions constitute a superseding, intervening cause of death: the women learned that the drug was heroin, not cocaine, realized that the drug had probably caused several deaths from news reports on television, further realized that distribution as cocaine would likely cause more deaths, yet continued to distribute the drug.
 
 
 18
 Whether death resulted from the distribution of heroin was a question submitted to the jury. Nnani's argument should have been made to the district court at the time the jury instructions were formulated or at sentencing, but not now for the first time on appeal. United States v. Fox, 889 F.2d 357, 359 (1st Cir. 1989) (need to object at sentencing); United States v. Ortega, 859 F.2d 327, 330 (5th Cir. 1988) (need to object to jury instructions), cert. denied, 489 U.S. 1027 (1989). Because Nnani failed to object at trial or sentencing, we may only reverse for plain error. Fed. R. Crim. P. 52(b).
 
 
 19
 The cause Nnani identifies as a superseding, intervening cause, namely the women's discovery that the drugs were heroin and their continued distribution of the drugs as cocaine,[3] did not cause the deaths with which Nnani was charged and upon which he was sentenced. He was charged with deaths that resulted from the distribution of drugs before the discovery that the drugs were heroin. Because the continued distribution of the drugs did not cause the deaths that were the basis of Nnani's sentence, the district court did not err in sentencing Nnani pursuant to § 2D1.1(a)(2) of the Sentencing Guidelines.
 
 
 20
 Nnani also contends that § 2D1.1(a)(2) violates the Due Process Clause of the Fifth Amendment because it does not require proof that the defendant knew, reasonably should have known, foresaw, or reasonably should have foreseen that death or serious bodily injury could have resulted from the use of the controlled substance. The only support he cites for this proposition is Kolender v. Lawson, 461 U.S. 352 (1983).
 
 
 21
 Kolender requires that "a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. at 357. Both § 2D1.1(a)(2) and the statute at issue here, 18 U.S.C.A. § 841(b)(1)(C), unequivocally provide that a defendant's sentence shall be enhanced if death or serious bodily injury results from use of a drug that the defendant distributes. Both the statute and guideline thus put drug dealers on clear notice that their sentences will be enhanced if people die from using the drugs they distribute. Section 2D1.1(a)(2) therefore satisfies the due process concern identified in Kolender .
 
 
 22
 The Sentencing Guidelines have consistently been upheld against various challenges based on due process. See, e.g., United States v. Bolding, 876 F.2d 21, 22-23 (4th Cir. 1989). Nnani provides no basis for reconsidering these decisions. Where serious bodily injury or death results from the distribution of drugs, Congress has chosen to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result. We discern no due process principles that require second-guessing this choice.
 
 V
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 These items included: (1) a bankcard in the name of Valentine Nnani; (2) two checks payable to Anthony Nnani and signed by Valentine Nnani; (3) a bank statement in the name of Valentine Nnani; (4) a scrap of paper with the name of Gary Bryant; (5) an express mail letter addressed to Gary Bryant; (6) a driver's license in the name of Gary Bryant, but with Valentine Nnani's photograph on it; (7) an express mail letter addressed to Valentine Nnani at 705-201 Navaho Drive; (8) medical information relating to Valentine Nnani; (9) a copy of Valentine Nnani's r# B1# esum# B1# e; and (10) a copy of Valentine Nnani's university transcript
 
 
 [2]
 The basis for the possession charge was the drugs found in the apartment. The heroin distributed to Ayalogu, Taylor, and Massenburg apparently came from the same source as the drugs found in the apartment; Nnani, however, was not charged with possession of the drugs given to the women. Thus, the women's testimony only supports an inference of intent to distribute; it is not direct evidence of actual distribution
 
 
 [3]
 The evidence did not indicate that Nnani ever told the women that the drug was heroin or otherwise gave them reason to believe it was not cocaine. Moreover, Sonia Taylor testified that the women distributed the drugs as heroin once they discovered the drugs were not cocaine. If true, this fact further undermines Nnani's theory