Walter F. KUSAY, Jr., Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 93–3973.

United States Court of Appeals,
Seventh Circuit.

Aug. 3, 1995.

Walter F. Kusay, Jr., Minocqua, WI, pro se.

Philip A. Guentert, Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Last May 3 the court issued an order, which we reproduce as an appendix, remanding for an evidentiary hearing to determine whether Walter Kusay's lawyer had refused his direction to appeal from his conviction for mail fraud. The mandate was to issue on June 26. Apparently impatient with this delay, a result of the extra time to seek rehearing when the United States is a party to civil litigation, see Fed.R.App.P. 40(a), 41(a), which a petition under 28 U.S.C. § 2255 initiates, the district court acted without waiting for the mandate. The court appointed counsel for Kusay and on May 18 held an evidentiary hearing. On June 5 the judge released a short opinion and entered an order denying Kusay's petition for collateral relief. The judge credited the lawyer's account of matters and disbelieved Kusay's. The district court sent the opinion and order to us as a "supplement to the record on appeal," and we deferred issuance of the mandate so that we could decide what significance this "supplement" possesses. We asked the parties for memoranda, alerting them to the possibility that the district judge lacked jurisdiction.

Kusay's appointed lawyer responded that, because Kusay has been released from prison, he is no longer "in custody" for purposes of § 2255. This is incorrect. Kusay is serving a term of supervised release, a form of custody that may be abbreviated if he prevails in this action. The case therefore is not moot. *United States v. Chavez–Palacios*, 30 F.3d 1290, 1293 (10th Cir.1994). Cf. *Garlotte v. Fordice*, —— U.S. ——, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995). For his part, the prosecutor suggested that we could finesse the subject by issuing our mandate *nunc pro tunc* as of May 17, retroactively bestowing jurisdiction on the district court. This suggestion betrays lack of understanding not only of the office of *nunc pro tunc* orders but also of this court's recent cases, which have disparaged efforts to use such orders to rewrite history. "This phrase— literally 'now for then'—refers to situations in which the court's records do not accurately reflect its actions. When the error comes to light, the court corrects the file to show what actually happened." *In re Singson*, 41 F.3d 316, 318 (7th Cir.1994). The power to correct erroneous records does not imply ability to revise the substance of what transpired or to backdate events. See *In re Jarvis*, 53 F.3d 416, 418–19 n. 2 (1st Cir.1995); *King v. Ionization International, Inc.*, 825 F.2d 1180, 1188 (7th Cir.1987); *United States v. Taylor*, 841 F.2d 1300, 1305 (7th Cir.1988). Cf. *United States v. Caswell*, 36 F.3d 29, 31 (7th Cir.1994). The United States does not ask us to correct records to show what happened; it wants us to change history. Incantation of Latin phrases does not bestow such an Orwellian power. We must decide whether the district judge had jurisdiction given the state of affairs when it acted.

"[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225 (1982). See also *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 1331,

84 L.Ed.2d 274 (1985); *Hovey v. McDonald,* 109 U.S. 150, 157, 3 S.Ct. 136, 139–40, 27 L.Ed. 888 (1883); *Apostol v. Gallion,* 870 F.2d 1335, 1337 (7th Cir.1989); *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1240 (7th Cir.1986). Just as the notice of appeal transfers jurisdiction to the court of appeals, so the mandate returns it to the district court. Until the mandate issues, the case is "in" the court of appeals, and any action by the district court is a nullity. *United States v. Wells,* 766 F.2d 12, 19 (1st Cir.1985); *Zaklama v. Mt. Sinai Medical Center,* 906 F.2d 645, 649 (11th Cir.1990); 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, *Federal Practice & Procedure* § 3949 at 359 (1977).

 *Griggs* notes an important limitation on the rule that just one court at a time possesses jurisdiction: the doctrine applies only to "those aspects of the case involved in the appeal." A district court therefore may award attorneys' fees while the merits are on appeal, *Terket v. Lund,* 623 F.2d 29, 33–34 (7th Cir.1980), and may consider whether to grant permanent injunctive relief while an appeal from a preliminary injunction is pending, *Chrysler Motors Corp. v. International Workers Union,* 909 F.2d 248, 250 (7th Cir. 1990). A district court may address ancillary questions such as costs, the registration of judgments, and motions for certificates of probable cause. *Chicago Truck Drivers Pension Fund v. Central Transport, Inc.,* 935 F.2d 114, 119–20 (7th Cir.1991); *Wilson v. O'Leary,* 895 F.2d 378, 382 (7th Cir.1990). And when a notice of appeal from an interlocutory order is a frivolous effort to block the normal progress of litigation, the district judge may so certify and continue with the case. *McMath v. Gary,* 976 F.2d 1026 (7th Cir.1992); *Apostol,* 870 F.2d at 1338–39. The hearing the district court conducted cannot be described as an ancillary or unrelated matter—it was the nub of the case, the very thing we directed the court to do on remand, but done before the remand occurred.

Citing *United States v. Stafford,* 29 F.3d 181 (5th Cir.1994), the prosecutor asks us to cast aside technicalities such as the allocation of jurisdiction among tribunals. We do not think the mandate's role in transferring jurisdiction some arcane precept that has outlived its usefulness; jurisdiction is power to act, and it is essential to have clear rules that define who, if anyone, possesses this power. *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202 (1988); *Helm v. RTC,* 18 F.3d 446 (7th Cir.1994). We grant that *Stafford* offers the prosecutor strong support. The court of appeals remanded for resentencing, a step the district court accomplished before the mandate issued. The court of appeals disapproved this action but held that the district court had not exceeded its jurisdiction. It gave two reasons, one practical and the second precedential. The practical reason was that the delay in issuance of mandate is designed to permit the court of appeals to reconsider its decision; because the court had not revised its judgment in the case at hand, it saw no obstacle to parallel adjudication in the district court. The precedential reason was that *United States v. Ortega,* 859 F.2d 327, 334–35 (5th Cir.1988), had held that a district judge may revise a sentence under a former version of Fed. R.Crim.P. 35 while an appeal is pending, and the panel in *Stafford* saw no difference in principle if the revision follows the appellate decision.

Neither of *Stafford'*s rationales persuades us. The "practical" consideration not only sleights the idea of jurisdiction as a limitation on power but also is most impractical. How is a district judge to know, when acting in advance of the mandate, whether the court of appeals will modify its judgment on rehearing? What sense would it make to say that a district court has jurisdiction to act, but only if at some later time the court of appeals does not revise its judgment? Jurisdiction is unlike quantum mechanics. Elementary particles can both exist and not exist at the same time, with uncertainty resolved only by the act of observation (this is the point of Schrödinger's cat, which is both dead and alive until the experimenter opens the box). Judicial power needs a more predictable basis. Litigants and judges should be able to know, from facts observable at the time they act, which shell covers the pea. Otherwise time, energy, and money will be wasted because later events will require hearings to be held anew and opinions rewritten. If the losing

party does not seek rehearing and wants the case to proceed with dispatch on remand, it may ask the court of appeals to issue the mandate before its scheduled date. Fed. R.App.P. 41(a). The prosecutor did not take any such step in our case, and the district court issued its decision while the United States still had time to seek rehearing. It would be unfortunate if losing parties could decide whether to seek appellate rehearing on the basis of the district court's proceedings applying the court of appeals' decision, yet that is an invitation *Stafford* and *Ortega* issue.

As for precedent: *Ortega* is plainly incorrect. Many cases, including *United States v. Cronic*, 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984), say that a district court may deny, but not grant, a post-judgment motion while an appeal is pending. *Cronic* involved a motion for a new trial under Fed.R.Crim.P. 33, but the principle is general. A district judge disposed to alter the judgment from which an appeal has been taken must alert the court of appeals, which may elect to remand the case for that purpose. The district court may not alter the judgment unless the court of appeals grants leave. See *United States v. Kerley*, 838 F.2d 932, 941 (7th Cir.1988); *Jason's Foods, Inc. v. Peter Eckrich & Sons*, 768 F.2d 189, 190–91 (7th Cir.1985). We applied this principle to Fed.R.Crim.P. 35(b) in *United States v. Bingham*, 10 F.3d 404 (7th Cir. 1993). See also *United States v. O'Connor*, 874 F.2d 483, 489 (7th Cir.1989). Higher authority dictates this outcome. *Berman v. United States*, 302 U.S. 211, 214, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937), holds that a district judge lacks authority to resentence a defendant while an appeal is pending. Neither *Ortega* nor *Stafford* cited *Berman*. Neither did *Doyle v. United States*, 721 F.2d 1195 (9th Cir.1983), which concluded that a district judge may alter a sentence during an appeal when it is "obvious" that the sentence is incorrect. What is "obvious" to one judge is not so clear to another, setting the stage for disagreement about the propriety of the action. What is more, as we keep repeating, the initial issue is one of power to act, which cannot be asserted just because a particular substantive decision would be wise. More

recent cases in the ninth circuit disavow *Doyle*, at least for cases under the current version of Rule 35. See *United States v. Ortega–Lopez*, 988 F.2d 70 (9th Cir.1993).

It is evident from decisions such as *Kerley*, *Jason's Foods*, and *O'Connor* that this circuit is committed to a position different from the fifth circuit's. Although one panel of the ninth circuit is on the side of *Ortega* and *Stafford*, another seems more congruent with our understanding. See *United States v. Coleman*, 688 F.2d 663 (9th Cir.1982) (the district court may conduct proceedings before the appellate mandate issues but may not enter a judgment based on those proceedings until receiving the mandate). See also *Ortega–Lopez, supra.* Firmly on our side are the second and eighth circuits, which held in *United States v. Ransom*, 866 F.2d 574 (2d Cir.1989), and *Reserve Mining Co. v. EPA*, 514 F.2d 492, 541 (8th Cir.1975) (en banc), that until the mandate issues the district court lacks jurisdiction to hold the proceedings for which the appellate opinion calls.

It would be possible, we suppose, to characterize the district court's proceedings in Kusay's case as an order denying relief from judgment under Fed.R.Civ.P. 60(b), a step the district court can take while an appeal is pending. Possible, but not plausible. Kusay did not ask the district court to reconsider the judgment from which an appeal had been taken—a judgment, as our order of May 3 recites, denying the petition on the ground that Kusay had forfeited the arguments he presented. The district judge did not revisit the forfeiture question. Instead he conducted the proceedings our order contemplated, addressing a completely different subject. The district judge must have assumed that he had the power to rule in Kusay's favor. Otherwise what was the point? It would be a hoax on prisoners to conduct proceedings that only prosecutors can win—for if the district judge had believed Kusay and disbelieved his former lawyer, the United States doubtless would be asking us to direct the district judge to start over.

"Haste makes waste" is an old adage. It has survived because it is right so often. See

*In re Continental Casualty Co.*, 29 F.3d 292 (7th Cir.1994). The United States Attorney acquiesced in a swift decision following our order because he did not plan to seek rehearing or file a petition for a writ of certiorari. Perhaps the Solicitor General would have seen things differently, although the lack of a request for rehearing *en banc* in *Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994), the basis of our decision, suggests not. No matter. The way to expedite proceedings after an appellate decision is to seek early issuance of the mandate. Neither side did. Instead of reminding the district judge that the case was still pending before this court, the prosecutor participated in the rump hearing in the district court. Because the district court lacked adjudicatory power, those proceedings are a nullity. The district court's order of June 5 is vacated. Unless Kusay's release from prison induces him to dismiss his petition, the district court must hold another hearing and make a fresh decision. Because Judge Alesia has made up his mind on this subject, the proceedings must be conducted before another district judge under Circuit Rule 36. The mandate will issue today.

### Appendix

### Order

Walter Kusay, Jr., pleaded guilty to mail fraud. Kusay says that he asked his lawyer to appeal the sentence, only to be told: "Wally, you don't have the money to appeal." No appeal was filed. When Kusay sought relief under 28 U.S.C. § 2255, the district court dismissed the petition, holding that all claims had been waived by failure to appeal.

*Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994), which was released after the district court's decision, holds that a lawyer's failure to carry out his client's instruction to take an appeal is ineffective assistance of counsel, entitling the defendant to an appeal (with the aid of counsel) as if on direct review. This case therefore must be remanded so that the district judge may determine whether Kusay is telling the truth when he says that he asked his lawyer to appeal, and that the lawyer refused.

If the lawyer indeed refused to file a notice of appeal, more than a new appeal lies in store. A criminal lawyer may not abandon a client whose funds have run out. Until relieved by a court, a lawyer must continue the representation—if need be, under the terms of the Criminal Justice Act. Circuit Rule 4. The United States submits that, when the lawyer balked, Kusay had to file his own notice of appeal. Not so. Kusay was entitled to the services of an advocate. A lawyer who deserts his client does not foist the burdens of self-representation on the defendant; instead the lawyer brings shame (and professional discipline) on himself, and the defendant is entitled to a new proceeding with the aid of a competent, ethical lawyer.

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion and with *Castellanos*.