**UNITED STATES of America**
**Plaintiff-Appellee,**

v.

**Herman K. BEEBE, Sr. and Dale A.**
**Anderson, Defendants-Appellants.**

No. 85–4428.

United States Court of Appeals,
Fifth Circuit.

June 30, 1986.

---

Camille F. Gravel, Helen Ginger Roberts, Alexandria, La., Sidney E. Cook, Shreveport, La., for Beebe.

William H. Jeffress, Jr., Washington, D.C., for Anderson.

Joseph S. Cage, Jr., U.S. Atty., D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before REAVLEY, RANDALL and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Herman Beebe and Dale Anderson appeal their convictions on three counts of defrauding the Small Business Administration (SBA) in various ways. We affirm.

Appellants were charged in a twenty-one count [1] indictment with benefitting from specific SBA loans (Counts 2–5), filing false statements with the SBA (Counts 6–11), and receiving SBA financing by wire transfer in furtherance of a scheme to defraud the SBA (Count 12) in violation of 18 U.S.C. §§ 1006, 1001 and 1343, respectively. Count 1 charged the appellants with conspiring to violate these laws and conspiring to defraud the SBA's Small Business Investment Company program in violation of 18 U.S.C. § 371. Appellants were convicted on Counts 1, 5 and 12 and sentenced to five years probation, and ordered to pay fines totaling $21,000.

---

1. The charges in Counts 13 through 21 were tried separately from Counts 1 through 12 and are not at issue in this appeal.

On appeal, Beebe and Anderson focus their attack on their conviction on Count 5 that charged them with violating 18 U.S.C. § 1006.[2] Appellants contend that: (1) Count 5 of the indictment is deficient; (2) the evidence does not support the convictions; and (3) the trial court erred in refusing to give a good faith defense instruction for Count 5. Appellants also assert that the transaction specified in Count 5 formed the basis for their convictions of conspiracy and wire fraud charged in Counts 1 and 12. Therefore, if the Count 5 convictions are overturned, they insist the convictions on Counts 1 and 12 must also be reversed. We first review the facts underlying Count 5.

## I.

In 1978, Savings Venture Capital Corporation (SVCC) was licensed by the SBA as a small business investment company (SBIC). SBIC's are private lending institutions which are licensed by the SBA. If the SBIC follows the regulations and restricts its loans to qualified business concerns— generally those with a relatively minimal net worth—the SBIC is eligible to receive "leveraged" financing through debt instruments purchased or guaranteed by the SBA. However, before it can apply for this financing, the SBIC must obtain private investment capital and loan these funds to qualified borrowers. Once the officer of the SBIC certifies that the privately generated funds have been loaned to qualified borrowers, the SBA will generally replenish the SBIC coffers with funds up to three times the amount of the SBIC's private capital. See 13 C.F.R. § 107 (1986).

The license application submitted by SVCC certified that it received $1,000,000 in private capital from Savings Life Insurance Company in return for 100% of its stock. Savings Life is a corporation wholly owned by AMI, Inc. After receiving the private capital, SVCC made numerous loans to small business concerns and qualified for and received SBA financing. At all relevant times, appellant Beebe was chairman of AMI's board and appellant Anderson was vice-chairman. Additionally, Beebe was a director of SVCC and Anderson was its president.

In November 1980, AMI contracted to buy from Christian Care, Inc., a leasehold interest in the San Jacinto Nursing Home located in Deer Park, Texas, for $100,000. Pursuant to the contract, AMI gave Christian Care a $25,000 deposit and was required to complete the purchase on December 29, 1980. However, AMI assigned the contract to American Medical Management Corporation (AMMC), an entity that was at least facially qualified to borrow from a SBIC. On December 29, 1980, SVCC loaned $100,000 to AMMC and AMMC used the proceeds of the loan to purchase the leasehold interest in the San Jacinto Nursing Home. After buying the leasehold interest, AMMC entered into an agreement with AMI whereby AMI agreed to manage the nursing home for a fee.

AMMC was initially incorporated in 1977 by George Owen, a business associate and personal friend of appellant Beebe, as a vehicle to acquire and operate hospitals. This venture, financed by Owen and Beebe, was shortlived and AMMC became inactive. On December 29, 1980—the same day AMMC acquired the interest in the San Jacinto Nursing Home—David Robinson, Owen's personal bookkeeper, was made president of AMMC. All of AMMC's stock was issued to Robinson without any investment or personal obligation on his part. Robinson had no experience operating nursing homes and knew nothing about the

**2.** Section 1006 provides in pertinent part:
Whoever, being an officer, agent or employee of or connected in any capacity with ... any small business investment company ... with intent to defraud the United States or any agency thereof, ... participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such corporation, institution, or association, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
18 U.S.C.A. § 1006 (West 1976).

affairs of AMMC. Robinson's only duties, for which he received $500 a month, involved ministerial tasks assigned to him by AMI officers.

George Owen also knew nothing about AMMC's financial affairs, had no duties and held no stock in AMMC although he testified that he expected to profit if AMMC was successful. He did receive a $1,000 per month "consulting" fee to help defray expenses incurred in the use of his Dallas apartment by Beebe and other AMI officers. After suffering losses for two years, AMMC's stock was acquired by Louisiana Nursing Homes, Inc. (LNH), a corporation effectively owned by Beebe's children, in exchange for the cancellation of a debt owed to LNH. The government proceeded against appellants in Count 5 on the theory that AMMC was a sham corporation through which SVCC loaned $100,000 to AMI for appellants' benefit in violation of 18 U.S.C. § 1006.

## II. SUFFICIENCY OF THE INDICTMENT

■ To be sufficient, an indictment must fairly inform the defendant of the charge against which he must defend and enable him to plead double jeopardy in future prosecutions of the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The indictment's validity is determined by a practical, not technical, reading

of the indictment as a whole. *United States v. Webb*, 747 F.2d 278, 284 (5th Cir.1984), cert. denied, —— U.S. ——, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). Generally, an indictment is sufficient when the charge tracks the governing statute as long as the statutory language unambiguously sets forth all essential elements, *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986); otherwise, if the statute defines the offense in generic terms, the indictment "must descend to particulars." *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962).

■ Appellants contend that Count 5 of the indictment is impermissibly vague because it fails to specify the illegal "benefit" which they allegedly received in connection with the $100,000 loan to AMMC.[3] However, Count 5 did inform appellants that the illegal benefit they received was their participation in the $100,000 loan from SVCC to AMMC. Under the established law of this circuit, the indictment is sufficient.[4]

■ Appellants also complain that before the trial the district court denied their request for a bill of particulars requesting information regarding the illegal benefit they received and argue that this ruling constituted reversible error. Because the indictment was sufficient, the district court did not abuse its discretion when it denied appellants' request for a bill of particu-

3. Count 5 of the indictment alleges:
   On or about the 31st day of December 1980, in the Western District of Louisiana, [appellants], being officers, directors, employees, agents, or connected in a capacity with SVCC, a Small Business Investment Company, duly licensed by the SBA, with intent to defraud said SBA, did unlawfully and willfully participate, share in, and directly and indirectly receive monies and benefits by means of and through the disbursement by SVCC of a wire transfer in the amount of $100,000 drawn against the SVCC account at Bossier Bank and Trust Co. for benefit of American Medical Management Corporation, the same representing proceeds of a purported legitimate

   loan from SVCC to American Medical Management Corporation.

4. Appellants urge that we should find Count 5 insufficient because a similarly worded count in an indictment alleging a violation of 18 U.S.C. § 1006 was found deficient in *United States v. Quinn*, 365 F.2d 256 (7th Cir.1966). Appellant's reliance on *Quinn* is misplaced. That court was not concerned with the adequacy of the description of benefit; the court there found that Count II of the indictment contained "no allegation as to the manner or means employed in receiving money, profits and benefits, or that the check described was issued without proper authority." *Id.* at 262. To the extent that *Quinn* can be read to support appellant's view that more detail is

lars.[5] *United States v. Chenaur,* 552 F.2d 294, 302 (9th Cir.1977).

### III. SUFFICIENCY OF THE EVIDENCE

Appellants argue that the evidence does not support their convictions on Count 5 because it fails to establish that AMMC was a sham corporation. Alternatively, Anderson contends that the evidence fails to prove that he had knowledge of this fact. On review, we consider whether the evidence viewed favorably toward the verdict could establish guilt beyond a reasonable doubt in the mind of a reasonable trier of fact. *United States v. Hernandez,* 731 F.2d 1147, 1149 (5th Cir.1984).

■ Appellants' first contention lacks merit. A review of the record persuades us that reasonable jurors could conclude beyond a reasonable doubt that AMMC was set up as a sham corporation for AMI's benefit. AMMC was reactivated at appellant Beebe's request. David Robinson was made president of AMMC at Owen's suggestion and all of its stock was issued to Robinson at no cost. Robinson admitted that he knew nothing about the management or affairs of AMMC and performed only those ministerial duties assigned him by AMI personnel.

Appellants assert that Robinson held the AMMC stock for Owen's benefit and that Owen was the true owner of AMMC. Although Owen testified that he expected to profit if AMMC was profitable, he did not invest any funds in AMMC, did not perform any duties on behalf of AMMC, and knew nothing of AMMC's financial affairs. The only payment Owen received from AMMC was $1,000 a month which he testified Beebe obtained for him from AMMC to help pay for the use of his apartment by AMI officers. Ultimately, AMMC's stock was acquired by LNH, a corporation effectively owned by Beebe's children.

Appellants insist that the evidence is entirely consistent with their contention that AMI did not control AMMC at the time of the SVCC loan, and that Robinson and Owen were placed in the role of passive investors by AMMC's management agreement with AMI. This argument is misplaced. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982), aff'd., 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Here, the jury was "free to choose among reasonable constructions of the evidence" and properly did so. *Id.*

■ Similarly, Anderson's argument that the evidence fails to prove his intent to defraud the SBA is meritless. At the time of the SVCC loan to AMMC, Anderson was a board member of AMI and president of SVCC. He signed a resolution authorizing AMI to assign the San Jacinto Nursing Home contract to AMMC and admitted

---

required in the indictment at issue, we decline to follow it.

**5.** Appellants additionally complain that that ambiguity of the indictment and the jury instructions allowed the jury to conclude that the illegal "benefit" appellants received was the legitimate management fee paid to AMI pursuant to its contract with AMMC to operate the San Jacinto Nursing Home. They refer to three questions asked by the government on cross-examination of appellant Anderson which they argue introduced this new theory of "benefit" to the jury.

Appellants in effect contend that the trial judge failed to instruct the jury that the management fee could not be considered an "illegal

benefit" under section 1006. However, appellants failed to request such a jury instruction or seek an appropriate cautionary instruction during cross-examination. At the charge conference, defense counsel specifically declined to request any such instruction upon being informed that the government had no intention of asserting this theory of benefit. Throughout the trial and in its closing argument, the government argued that appellants benefitted from the $100,000 loan described in Count 5 because AMMC was a sham corporation set up for AMI's benefit. Therefore, we conclude that the trial court did not commit plain error in failing to warn the jury against the government's supposed new theory of benefit.

knowing that AMI had contracted with AMMC to manage the nursing home. He approved the SVCC $100,000 loan to AMMC and was aware that the money would be used to purchase the nursing home leasehold interest. Although he testified that he believed George Owen owned AMMC and that the transaction was proper, the jury was entitled to infer from the evidence that Anderson was aware that AMMC was a sham corporation and approved the SVCC loan with intent to defraud the SBA.

## IV. JURY INSTRUCTION

Appellants requested the trial judge to instruct the jury that good faith on their part is a complete defense to all counts of the indictment. The trial judge gave a good faith defense instruction but limited it to the charges of wire fraud and filing false statements contained in Counts 6–12.

■ The parties agree that the applicable law in this circuit establishes that an accused is ordinarily entitled to a good faith defense instruction when intent to defraud is an element of the offense charged and the defense is fairly raised by the evidence. *United States v. Goss,* 650 F.2d 1336 (5th Cir.1981); *United States v. Fowler,* 735 F.2d 823 (5th Cir.1984). However, failure to give the instruction is not reversible error if intent is properly defined in the charge to exclude a good faith belief and defense counsel presents the substance of this defense to the jury in closing argument. *United States v. Fooladi,* 746 F.2d 1027, 1030 (5th Cir.1984), cert. denied, —— U.S. ——, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985); *United States v. Gray,* 751 F.2d 733, 735 (5th Cir.1985).

■ In light of this authority, appellants do not argue that the trial judge's failure to give a good faith defense instruction for Counts 1 and 5 demands reversal. Rather, they contend that the court's instruction approving a good faith defense for Counts 6–12 allowed the jury to infer that good faith was not a defense to Counts 1 and 5. We are not persuaded by this ingenious argument. It is unrealistic

to believe that the jury would place such emphasis on a single sentence in a lengthy charge. The government did not argue to the jury that good faith was not a defense to Counts 1 and 5; in closing argument both the prosecution and the defense focused on whether the defendants acted in good faith. This issue was squarely put to the jury which decided it against the defendants.

## V. CONCLUSION

Having rejected appellants' points of error on Count 5 of the indictment, we need not consider their contingent arguments relating to their convictions on Counts 1 and 12. The judgment of the district court is

AFFIRMED.