**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shearn MOODY, Jr., Defendant–Appellant.**

No. 89–6271.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1991.

---

Samuel J. Buffone, Terrance G. Reed, Asbill, Junkin, Meyers & Buffone, Washington, D.C., for Shearn Moody.

Sean Connelly, Atty., Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., Henry K. Oncken, U.S. Atty., Paula Offenhauser, Asst. U.S. Atty., Houston, Tex., Sidney Glazier, Atty., Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Shearn Moody, Jr. (Moody), appeals his convictions for: (1) concealing property belonging to his bankruptcy estate, in violation of 18 U.S.C. § 152 ¶ 1 (Count 1); and (2) subsequent to the initiation of his bankruptcy proceeding, concealing his property with intent to defeat the provisions of title 11, in violation of § 152 ¶ 7 (Count 2). Primarily at issue are whether the charges are inconsistent, requiring reversal, and whether § 152 ¶ 7 applies only to pre-bankruptcy petition activity. While the Counts may have been multiplicitous (an issue not before us), they were not inconsistent; and, by its plain terms, ¶ 7 applies to both pre- and post-petition activity. We AFFIRM.

I.

Shearn Moody's father died in 1936, when Moody was two years of age, leaving substantial trusts to both Moody and his brother, Robert Moody. Each trust included a three-eighths interest in the Beach Corporation (Beach). Moody's mother owned the remaining one-quarter interest. Beach owned the property in issue, real estate known as Outlot 162 in Galveston, Texas. In December 1963, Beach deeded Outlot 162 to Moody, Robert Moody, and their mother, as individuals.

That month, Moody, Robert Moody, and their mother, as general partners, formed the Seaside Lanes partnership to own and manage the properties owned individually by the Moodys or by the trusts of Moody or Robert Moody. In the partnership agreement, Moody, Robert Moody, and their mother transferred their interests in Outlot 162 to the partnership. A motel had been built on a portion of Outlot 162; the partnership constructed a bowling alley on the property. In June 1984, the partnership sold the bowling alley for approximately $500,000.[1] The sale proceeds were invested in a certificate of deposit (CD) at Moody National Bank and totalled over $500,000 at maturity in December 1984.

---

1. In 1978, the partnership sold the bowling alley, taking a $675,000 promissory note, secured by a deed of trust. The bowling alley was destroyed by a hurricane; the purchasers subsequently defaulted; and the partnership foreclosed on the property.

In the interim, Moody had established an insurance company, which was placed in receivership in 1972. One result of the company's demise was a civil fraud action against Moody personally, resulting in a $6 million judgment, entered January 1980, which was affirmed by this court. *Meyers v. Moody*, 693 F.2d 1196 (5th Cir.1982), *cert. denied*, 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983). At that time, the judgment, including interest, totalled approximately $12 million.

In 1980, approximately three months after entry of the district court judgment, Moody created the 1980 Trust to provide a life income to a long-time employee and to maintain both the Moody family home and his ranch. The 1980 Trust was funded in part by a transfer of all of Moody's property acquired from the trust established for Moody by his father. However, Moody's interest in Outlot 162 was not conveyed to the 1980 Trust until December 29, 1982, six days after this court affirmed the judgment against Moody and six months before his first bankruptcy petition was filed.

In June 1983, Moody filed a bankruptcy petition under Chapter 13 in the Southern District of Texas. The petition was subsequently withdrawn and a similar petition filed in November 1983, in North Carolina, where Moody was receiving medical care. The Chapter 13 proceeding was converted to a Chapter 11 reorganization; and a trustee was appointed in October 1984. The North Carolina bankruptcy court transferred the proceeding to the Southern District of Texas in January 1985, and a new trustee was appointed.

Both of Moody's bankruptcy petitions listed his Seaside Lanes partnership interest as an asset of the bankruptcy estate. Moreover, in July 1984, after the partnership sold the bowling alley, Moody's attorney, Jane Ford, informed Robert Moody, Chairman of the Board at Moody National Bank, that Shearn Moody's interest in the sale proceeds (the $500,000 CD) belonged to the bankruptcy estate and warned Robert Moody that the sale might be void because it had occurred without notice to the bankruptcy creditors. And, by letter that August, Ford instructed the president of Moody National Bank that the $500,000 CD should not be disbursed absent a bankruptcy court order. The North Carolina trustee likewise demanded that Moody's share of the proceeds be released to the trustee when the CD matured.

However, when the CD matured on or about December 21, 1984, Robert Moody ordered the proceeds wired to the partnership's account at the Bank of Galveston. On December 24, 1984, Shearn Moody cashed three checks totalling $201,000; they were drawn on the Seaside Lanes account, payable to Seaside Lanes, and endorsed by Shearn Moody. Moody then converted the proceeds into cashiers checks totalling $197,000. Subsequently, he cashed those checks and used the funds to buy cashiers checks in smaller amounts, which he cashed over the next several months. Moody did not inform the North Carolina bankruptcy trustee that he had taken this distribution from the partnership. In fact, the distribution and expenditure were not known to either the North Carolina or the subsequent Texas trustee until the end of July 1985, as a result of a bankruptcy deposition (Moody's) and hearing the next day (Robert Moody's testimony).

In December 1986, Moody and his employee, Norman Revie, were charged in a 14–count indictment in the Southern District of Texas. The first 13 counts charged mail and wire fraud based on a scheme unrelated to the present case; Count 14 charged bankruptcy fraud under 18 U.S.C. §§ 152 and 2. In January 1987, Moody moved to dismiss the indictment; and in July 1987, his motion to sever Count 14 from the remainder of the indictment was granted.[2] A two-count superseding indictment was filed in April 1989 (the indict-

---

2. The first 13 counts were tried first under a superseding indictment. Moody was convicted, but this court reversed on the ground that certain evidence offered by Moody was improperly excluded. This court upheld the evidentiary sufficiency on all but two counts and held that retrial on the remaining counts would be permitted. *United States v. Moody*, 903 F.2d 321 (5th Cir.1990).

ment), which charged Moody with fraudulent concealment and transfer of the $201,000, in violation of 18 U.S.C. § 152 ¶ 1 (Count 1) and ¶ 7 (Count 2).

Moody's principal defenses at trial were that the $201,000 (the proceeds) was not property belonging to the bankruptcy estate and that he did not act with the requisite criminal intent. Moody claimed that the $201,000 was not his personal property; that instead, it was property held under the 1980 Trust.[3] However, as stated above, both bankruptcy petitions listed Moody's interest in the Seaside Lanes partnership as a personal asset. And, *inter alia*, the government asserted that the 1980 Trust was a sham.

In September 1989, the jury found both Moody and Revie guilty on both Counts. After being sentenced in December 1989, to concurrent five year terms of incarceration and a fine of $5,000 on each Count, Moody timely appealed.[4]

## II.

Moody contends that (1) the two Counts are mutually repugnant, requiring reversal; (2) Count 2 should be dismissed, arguing that § 152 ¶ 7 pertains only to pre-petition conduct; (3) the district court committed plain error in its jury instruction defining property belonging to the bankruptcy estate; (4) the indictment was insufficient; (5) the court abused its discretion in denying a bill of particulars; and (6) the court committed reversible error in admitting testimony protected by the attorney-client privilege.

### A.

■ Moody urges reversal on the basis that the Counts are factually repugnant to each other; that there are mutually inconsistent allegations of essential elements of each Count. Simply put, Moody contends that to convict on Count 1, the jury had to find that the proceeds were "property of the bankruptcy estate," but to convict on Count 2, the jury had to find that the same property (the proceeds) was "property of the debtor." Accordingly, Moody argues that "proof of Count Two necessarily establishes a defense to Count One and vice versa."

In addition, Moody argues that § 152 ¶ 7 only applies to pre-petition activity. Therefore, he contends that corresponding Count 2 must be dismissed, because the charged concealment was post-petition.

As revised by the Bankruptcy Reform Act of 1978, Pub.Law 95–598, 92 Stat. 2549, 11 U.S.C. § 101, *et seq., as amended*, the Bankruptcy Code "was intended to create a more uniform and comprehensive scope to 'property of the estate' which is subject to the reach of debtors' creditors than had previously existed under the old Bankruptcy Act"; and pursuant to "Section 541 of the Code, all property in which a debtor has a 'legal or equitable interest' at the time of bankruptcy comes into the estate...." *Matter of Goff*, 706 F.2d 574, 578 (5th Cir.1983).

The statutes concerning crimes relating to bankruptcy, 18 U.S.C. § 151 *et seq.*, were amended to conform to the new Code, Bankruptcy Reform Act of 1978 § 314, Pub.L. 95–598, 92 Stat. 2676. Concealment of assets is one of the subjects to which 18 U.S.C. § 152 pertains; and, as stated, Moody was charged with offenses under its first (Count 1) and seventh (Count 2) paragraphs. The first paragraph provides:

> Whoever knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any case under title 11, any property belonging to

---

**3.** Moody conveyed Outlot 162 into the 1980 Trust by deed dated December 29, 1982, from Moody, individually, to Moody as "trustee." The bankruptcy petitions, filed less than a year later, contained a question requiring the listing of any property transfers within the past year; Moody answered "No."

**4.** Revie appealed but subsequently became a fugitive when he failed to surrender for incarceration. This court dismissed his appeal in May 1990.

the estate of a debtor ... [shall be fined or imprisoned or both].

The seventh paragraph provides:

Whoever, either individually or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against him or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation ... [shall be fined or imprisoned or both].

As reflected above, the first paragraph of § 152 is concerned with "property belonging to the estate of a debtor," while the seventh concerns, *inter alia*, a person who, "with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of *his property* ...." (Emphasis added.) For purposes of the bankruptcy criminal statutes, a "debtor" is "a debtor concerning whom a petition has been filed under title 11." 18 U.S.C. § 151. The seventh paragraph of § 152 does not employ the term "property of a debtor."

Pursuant to § 152 ¶ 1, Count 1 charged that

[f]rom on or about December 24, 1984 ... MOODY ... and ... REVIE ... did knowingly and fraudulently conceal from a custodian, trustee, marshal, and other officer of the court charged with the control and custody of property, and from creditors, in a case under title 11, property belonging to the estate of the debtor SHEARN MOODY, JR., in that ... MOODY ... concealed approximately $201,000.00 which was property belonging to the estate of the debtor SHEARN MOODY, JR.

And, consistent with § 152 ¶ 7, Count 2 charged that

[f]rom on or about December 24, 1984 ... SHEARN MOODY, JR., individually, and NORMAN REVIE, acting as agent for SHEARN MOODY, JR., ... did with intent to defeat the provisions of title 11, knowingly and fraudulently transfer and conceal property of the debtor, SHEARN MOODY, JR., in that SHEARN MOODY, JR. and NORMAN REVIE transferred and concealed approximately $201,000.00 from the Seaside Lanes Partnership.

Paragraph 7 speaks of "his property or the property of such other person or corporation." Perhaps because Count 2 charged that both Moody and Revie concealed Moody's property ("property of the debtor, SHEARN MOODY, JR."), that Count did not use the statutory language "his property." In any event, Moody did not, and does not, charge that this alone renders that Count facially defective. Instead, Moody contends that the phrase "his property" in ¶ 7 is "a plain reference to a *debtor's* property as it exists prior to the filing of bankruptcy," as distinct from property of the bankruptcy estate created at the time the petition is filed. (Emphasis by Moody.)

■ Permitting a jury to return convictions on inconsistent, or mutually exclusive, counts arguably requires that a new trial be granted. *See, e.g., United States v. Gaddis,* 424 U.S. 544, 547, 96 S.Ct. 1023, 1025, 47 L.Ed.2d 222 (1976); *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); *Douglas v. Long,* 661 F.2d 747, 749 (9th Cir.1981), *cert. denied,* 456 U.S. 932, 102 S.Ct. 1984, 72 L.Ed.2d 449 (1982); *United States v. Chrane,* 529 F.2d 1236, 1238 (5th Cir.1976). Prior to, during, and after trial, Moody consistently, and most persistently, urged that the two Counts are inconsistent, or mutually repugnant; in the alternative, multiplicitous.

In charging the jury, the district court properly distinguished between § 152 ¶ 7 "his property" and ¶ 1 "property belonging to the estate of a debtor," by charging the jury as follows:

It is an essential element of the offense charged under Count 2 of the indictment that the property allegedly transferred or concealed belonged to Shearn Moody, Jr. It should be noted that property belonging to Shearn Moody, Jr. may or may not be property belonging to the estate of Shearn Moody, Jr. as that term has been defined for you.

The Bankruptcy Code requires a debtor to disclose all of his assets, even if the bankruptcy court later determines that a

particular asset is not part of the debtor's bankruptcy estate.

And in stating the elements that must be proved to convict on Count 2, the court charged the jury that the government had to establish the following, among other elements, beyond a reasonable doubt:

> Second, that the property allegedly transferred or concealed by Shearn Moody, Jr. belonged to him. Under this statute it is not necessary for the property to be an asset of the bankruptcy estate. It is sufficient if in concealing or transferring his own property the defendant has the intent at the time of the concealment or transfer to defeat the bankruptcy law.

> \*   \*   \*   \*   \*   \*

> Fourth, that by transferring or concealing the property in question, if he did so, Shearn Moody, Jr. acted with intent to defeat the bankruptcy law.

■ The district court's analysis and jury instruction were correct; there is no inconsistency. Paragraph 1 is concerned with concealing "property belonging to the estate of a debtor," while ¶ 7 addresses a person either "in contemplation of a case under title 11 ..., *or with intent to defeat the provisions of title 11*," concealing "his property." (Emphasis added.) Notwithstanding the disjunctive phrases in ¶ 7, Moody argues that it only concerns pre-petition activity, that "[u]pon filing of a bankruptcy, *all* of a debtor's property automatically becomes part of the bankruptcy estate ... and thus the only time at which the debtor possesses 'his property' is prior to filing for bankruptcy. Post-petition, a debtor possesses only those assets which

the Bankruptcy Code excludes from the bankruptcy estate." (Emphasis by Moody.)

■ Needless to say, words in a statute are to be given their plain and ordinary meaning. *E.g., United States v. Chen*, 913 F.2d 183, 189 (5th Cir.1990). In ¶ 7, the phrase "with intent to defeat the provisions of title 11" is in the disjunctive to the phrase "in contemplation of a case under title 11." And, as discussed above, the paragraph does not use the term "property of the debtor."[5] Accordingly, there is no need to dissect the Bankruptcy Code. We will not give the plain wording and meaning of ¶ 7 the strained, hypertechnical reading urged by Moody.

Moreover, while this appears to be an issue of first impression, holdings in other § 152 cases, without specifically addressing this issue, support our position. *See, e.g., United States v. Parkhill*, 775 F.2d 612 (5th Cir.1985) (debtor charged and convicted under ¶¶ 1 and 7 for post-petition activity concerning the same property); *United States v. Turner*, 725 F.2d 1154 (8th Cir. 1984) (defendant was convicted under ¶ 7 for post-petition concealment).

As referenced above, and as an alternative to the contention that the Counts are inconsistent, Moody urged in the district court that the Counts are multiplicitous. As discussed, for example, in *Chrane*, counts are multiplicitous when they charge the same, or a single, offense; when, for example, they "are coterminous, in effect one offense with two labels." 529 F.2d at 1238. Multiplicity addresses double jeopardy; and where the jury is allowed to return convictions on multiplicitous counts, the remedy is to remand for resentencing, with the government dismissing the count(s)

---

**5.** For example, prior to being amended in 1984, 11 U.S.C. § 547(b) ("Preferences") used the term "property of the debtor." It was amended to substitute "interest of the debtor in property" for that term. Pub.L. 98–353, Title III, §§ 310, 462 (July 10, 1984, effective with respect to cases filed 90 days after that date). The amended term used in Section 547(b) thus conforms with the above-referenced § 541's definition of "property of the estate" as certain "interests of the debtor in property." *See Begier v. I.R.S.*, —— U.S. ——, 110 S.Ct. 2258, 2263 & n. 3, 110

L.Ed.2d 46 (1990), where the Court noted that for the pre–1984 amended § 547(b), the Code did not define "property of the debtor." Moreover, *see* 18 U.S.C. § 3284, which provides:

> The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge.

that created the multiplicity. *Id.*[6]

Here, however, Moody in his brief carefully avoids asserting that the Counts are multiplicitous. At oral argument, the government stated that while there might be multiplicity, there was no inconsistency; but Moody responded that he was not urging multiplicity, only inconsistency, presumably because, if we held the charges to be multiplicitous, this would require only that the conviction on one of the Counts be dismissed. Because the sentences were concurrent, the net result of success on this contention would be the elimination of one of the $5,000 fines. Instead, he seeks reversal of both convictions by arguing that the Counts are inconsistent. Accordingly, we do not address whether the Counts are multiplicitous; and, instead, hold only that they are not inconsistent and that, therefore, reversal is not required.

And, as discussed above, because ¶ 7 applies to both pre- and post-petition activity, Moody's contention that the Count 2 conviction must be dismissed is also without merit.

### B.

■ Moody asserts that the district court erred in its jury instruction defining § 152 ¶ 1 "property belonging to the bankruptcy estate" for Count 1. Moody failed to object at trial to this instruction; accordingly, he concedes, correctly, that he must demonstrate plain error. Fed.R.Crim.P. 30; *United States v. Yamin*, 868 F.2d 130, 132 (5th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989); *United States v. Ortega*, 859 F.2d 327, 330–31 (5th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1157, 103 L.Ed.2d 216 (1989); *see also* Fed.R.Crim.P. 52(b). Plain error is a mistake so fundamental that it constitutes a

"miscarriage of justice." *Yamin*, 868 F.2d at 132. It "permits us 'to correct only particularly egregious errors ... that seriously affect the fairness, integrity, or public reputation of judicial proceedings' and result in a miscarriage of justice." *Ortega*, 859 F.2d at 330 (citation omitted). Moreover, "[i]n determining whether a faulty jury instruction rises to the level of plain error, we do not examine the instruction in a vacuum"; we look at the charge as a whole and the closing arguments; in short, we look at the instruction "in the context of the trial as a whole." *Id.*

The salutary purposes for the plain error standard, especially in the context of failing to contemporaneously object to a proposed jury instruction—and most especially for areas of the law (bankruptcy and trusts) and a trial as technical and precise as are involved here, are obvious. Accordingly, there must be more than error; there must be plain error—a justifiably higher, and more demanding, standard.

During trial, considerable testimony was devoted to the definition of a spendthrift trust and how such a trust, its corpus and the proceeds from it are handled in a bankruptcy proceeding, to Moody's various trusts, to which of them, if any, constituted a spendthrift trust, and to how his spendthrift trust(s) and such proceeds, if any, were handled in his bankruptcy proceeding. The instruction in issue provided:

> "**Property belonging to the bankruptcy estate**" of Shearn Moody, Jr. means any legal, equitable or beneficial interest of the debtor in property on the date the bankruptcy petition was filed or that he may have acquired after the commencement of the case other than earnings from personal services or loan proceeds. The term "**property belonging to the bankruptcy estate**" does not include

---

**6.** The district court was concerned about multiplicity; and when defendants moved again for acquittal after both sides rested, the court reserved ruling, pending the jury verdict, and stated:

> If the jury convicts on both [Counts], then I think I have an affirmative duty at that point to determine if in fact [the jury has] done something that would place these parties in a double jeopardy ... circumstance....

Following return of the verdict, the court denied defendants' motions for acquittal, in which it was again urged that the Counts are "fatally in conflict with one another," and, in the alternative, that the "conviction and sentencing on both counts would violate the double jeopardy clause of the Fifth Amendment...."

property held in trust in the name of the debtor for the benefit of others, but may include any beneficial interest that the debtor may have in a trust as well as any proceeds derived from trust property. *Moreover, trust property held for the benefit of others is excluded only if the trust qualifies as a spendthrift trust.* The fact that a trust may contain a spendthrift provision does not automatically qualify it as a spendthrift trust. You may consider the motive as well as the intent and acts of the party creating the trust.

(Emphasis in italics added.) Moody asserts that the italicized portion of the charge. is an incorrect statement of the law, and that, because his defense at trial was that the $201,000 was not "property of the estate" but was, instead, property of the 1980 Trust, the erroneous charge amounted to a directed verdict on an essential element of the offense and therefore constituted plain error.

During the charge conference, Moody did not object to any portion of the instruction in issue. However, after the government completed its initial closing argument, Moody did object to certain portions of the instruction; and the district court amended it accordingly. But, the objection did not concern the spendthrift language in the instruction. Instead, it concerned only changing "property of the estate" from "means *all property* in which ... Moody held a legal, equitable, or beneficial interest," to "means any legal, equitable, or beneficial *interests* of the debtor in property," consistent with 11 U.S.C. § 541. (Emphasis added.)[7]

The exclusion, *vel non,* of a debtor's interest in or under a "spendthrift trust" from the property of the estate is covered by 11 U.S.C. § 541(c).[8] *See, e.g., Matter of Goff,* 706 F.2d at 580 ("Congress intended to exclude only trust funds in the nature of 'spendthrift trusts' from the property of

the estate") and at 582 ("Congress intended by its reference [in § 541(c)(2) ] to 'applicable nonbankruptcy law' to exempt from the estate only those 'spendthrift trusts' traditionally beyond the reach of creditors under state law").

Careful reading of the instruction in issue reflects—certainly for plain error purposes—that it makes a distinction between "property held in trust" and "trust property held." The court instructed that property of the estate did "not include *property held in trust* in the name of the debtor for the benefit of others, but may include any beneficial interest that the debtor may have in a trust *as well as any proceeds derived from trust property.*" (Emphasis added.) Concerning such proceeds or other property held by the debtor, such as the $201,000 in issue, the court then arguably followed up, by limiting the exclusion: "Moreover, *trust property held* [—not held in trust—] *for the benefit of others* is excluded only if the trust qualifies as a spendthrift trust." (Emphasis added.)

In addition, prior to the above definitional instruction being given, the court, instructing the jury on the elements that had to be proved beyond a reasonable doubt to convict under Count 1, included the following:

Fourth, that Shearn Moody, Jr. knew at the time of the alleged knowing and fraudulent concealment that the approximately $201,000 from the sale of the Seaside Lanes property was "property of the bankruptcy estate" of Shearn Moody, Jr., as that term is hereafter defined for you, and *was not property held in trust for the benefit of others.*

(Emphasis added.) Furthermore, prior to giving the instruction in issue, the court charged the jury that "even previously disclosed property can be concealed if the defendant conceals the ultimate disposition of the property or proceeds derived from

---

**7.** Moody has different counsel on appeal.

**8.** Section 541(c) provides in pertinent part:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under

subsection (a)(1), (a)(2), or (a)(5) of this section. . . .

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

the property." And, immediately after giving the instruction in issue, the court charged the jury as follows:

> Whether property belongs to the bankruptcy estate is not necessarily to be determined with reference to the schedules filed by debtor. Whether or not an item of property is scheduled by a debtor is not controlling, and the fact that an item of property is scheduled by a debtor does not necessarily mean that such property is "property belonging to the bankruptcy estate" of a debtor. You may, however, consider the fact that the asset was so listed along with other evidence in determining both the character of the asset as well as the intent of the defendants.

Closing arguments were consistent with the above. They centered on whether the interest in Seaside Lanes was part of the 1980 Trust, whether that trust was a sham, and whether, in any event, Moody believed that it was a valid trust.[9]

Pursuant to the standard for plain error, and when the challenged instruction is viewed under the proper standard—in the context of the trial as a whole, there was no plain error.

## C.

◼ Moody contends also that the indictment violated his Fifth and Sixth Amendment rights to be informed of the nature of the charges against him, primarily on the ground that the charge in both Counts that he "concealed" the proceeds, without pleading more specific facts, "left the prosecution free to roam" among everchanging theories of concealment and makes it impossible for this court to determine if Moody was convicted for the same conduct for which he was indicted (quoting *Russell v. United States*, 369 U.S. 749, 768, 82 S.Ct. 1038, 1049, 8 L.Ed.2d 240 (1962)); that the indictment "fail[ed] to define the words 'concealed' or 'transferred' or to provide any facts which would clarify their meaning in the indictment." However, "[a]n

---

**9.** During closing arguments, presented before the jury was charged, a spendthrift trust was referred to at least twice. The government stated:

> All this [claimed protected by the 1980 Trust] was spent on houseboys, landscaping, so forth. This was no trust purpose, this was to benefit Shearn Moody personally.
> Which brings us to another thing, I think the court will instruct you that while property which is placed in trust for the benefit of another person is not part of a bankruptcy estate, in essence, the court is going to tell you it has to be a valid trust. And if it's not a valid spendthrift trust, it's still part of the bankruptcy estate.
> You know all of this benefitted Mr. Moody personally. You also know that Mr. Moody had the power to amend that trust at any time, he could have done with it whatever he wanted. It was just another one of his little roadblocks to try to throw up in order to cheat, in order to avoid his obligations under the law.

There was no objection to the comment about a spendthrift trust. Revie's counsel commented on one of Moody's claimed spendthrift trusts, but not the 1980 Trust, concerning payments of fees to Moody's bankruptcy attorney, Ford, on whom Revie's attorney placed blame for the bankruptcy errors, as discussed *infra* in Part II E.:

> I hope you will look at that letter and say, this woman [Ford] from the very beginning was determined to resist and obstruct and delay

the final disposition of this bankruptcy proceeding, for a very good reason, a very good reason.

> I think the same day Jane Ford wrote the letter ... she files a statement required by law, ... telling the bankruptcy court I'm going to get some more money and this money is ... not property of the bankruptcy estate, it is indeed a spendthrift trust and other property not property of the debtor's estate, specifically the Shearn Moody Holding Corporation funds.
> Now, Jane Ford was taking the position that the Shearn Moody Holding Company distributions, those are the distributions from Trust '57 that you recall that weren't property of the bankruptcy estate and she was entitled to be paid from those funds.

And, Moody's counsel stated in his closing:

> I expect [the court] will [instruct] you that one of the essential elements of this offense that the government must prove beyond a reasonable doubt ... is [that] Shearn Moody, Jr. knew at the time of the alleged knowing fraudulent concealment that the approximately $201,000 from the sale of the Seaside Lanes property was property of the bankruptcy estate of Shearn Moody, Jr. as that term is hereafter defined for you and ... was not property held in trust for the benefit of others.

indictment for a violation of ... [§] 152 need not allege evidentiary facts showing the manner of the concealment." *United States v. Vanderberg*, 358 F.2d 6, 10 (7th Cir.1966).

■ An indictment is sufficient if it (1) contains the elements of the offense charged; (2) fairly informs the defendant of the charges he must prepare to meet; and (3) enables a defendant to plead an acquittal or a conviction in bar to future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. De La Rosa*, 911 F.2d 985, 988–89 (5th Cir.1990). It is generally sufficient "when the charge tracks the governing statute as long as the statutory language unambiguously sets forth all essential elements." *United States v. Beebe*, 792 F.2d 1363, 1366 (5th Cir.1986). And it need not set out the "evidentiary details by which the government plans to establish" the defendant's guilt, *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir.1986); but if the statute defines the offense in "generic terms," the indictment "must descend to particulars." *Russell*, 369 U.S. at 765, 82 S.Ct. at 1047; *Beebe*, 792 F.2d at 1366.

■ The Counts were consistent with the language of the subsections under which Moody was indicted. As discussed above, compare § 152 ¶ 1 (proscribing concealment of "any property belonging to the estate of a debtor") with § 152 ¶ 7 (proscribing fraudulent transfer or concealment by debtor of "any of his property"). In addition, both set the time frame for the alleged concealment as beginning on December 24, 1984—the day Moody withdrew the $201,000. Concealment is a continuing offense, *United States v. Arge*, 418 F.2d 721, 724 (10th Cir.1969), and may be proven by evidence establishing an ongoing course of conduct. The government was not obligated to allege the specific "evidentiary details." *Gordon*, 780 F.2d at 1172. In addition, Count 1 contained the other necessary

elements: (1) that the property concealed, which was the property of the estate, was $201,000 which came from the Seaside Lanes partnership; (2) that the property was concealed from the bankruptcy trustees, among others; (3) that it was so concealed in Houston and elsewhere from December 24, 1984 onward; and (4) that Moody acted knowingly and fraudulently. The second Count alleged the necessary elements to charge a crime under ¶ 7 and likewise stated the other essential elements of the offense.

Accordingly, we find that the indictment was sufficient.

### D.

Moody contends also that the denial of a bill of particulars, under Fed.R.Crim.P. 7(f), constituted reversible error. We review such "denial ... under an abuse of discretion standard." *United States v. Marrero*, 904 F.2d 251, 258 (5th Cir.), *cert denied*, —— U.S. ——, 111 S.Ct. 561, 112 L.Ed.2d 567 (1990). The ruling is reversible only if the defendant establishes "actual surprise at trial and demonstrate[s] prejudice to his substantial rights." *Id.* Moody contends that he did.

■ A bill of particulars is not required if a defendant is otherwise provided, *inter alia*, with sufficient information to enable him to prepare his defense and avoid surprise. *See United States v. Levergne*, 805 F.2d 517, 521 (5th Cir.1986); *Marrero*, 904 F.2d at 258. Accordingly, the criteria for the sufficiency of an indictment and for whether a district court erred (abused its discretion) in denying a bill of particulars are very similar. *Beebe*, 792 F.2d at 1366–67 ("Because the indictment was sufficient, the district court did not abuse its discretion when it denied appellants' request for a bill of particulars.") (footnote omitted).

As discussed, the indictment was sufficient. Furthermore, we do not find the requisite surprise and prejudice.[10] Accord-

---

**10.** Another factor, which we need not address, is that Moody did not use the discovery available to him under Fed.R.Crim.P. 16. *See United*  States *v. Vasquez*, 867 F.2d 872, 874 (5th Cir. 1989).

ingly, the denial was not an abuse of discretion.

### E.

Moody's final contention is that the district court committed reversible error in admitting testimony from Moody's bankruptcy attorney, Ford, that Moody had not objected to her listing in the petitions both Seaside Lanes and the 1980 Trust as assets of the bankruptcy estate. Among other grounds, Moody argues that such non-communication between an attorney and client is, under certain circumstances, a privileged communication.

In federal criminal proceedings, the attorney-client privilege is applied pursuant to Federal Rule of Evidence 501. As with other rulings on evidence, even if a ruling on the privilege is erroneous (an abuse of discretion), it is not reversible "unless a substantial right of the party is affected...." Fed.R.Evid. 103(a)(1); Fed.R. Crim.Proc. 52(a); *Moody*, 903 F.2d at 326 (evidentiary rulings reviewed "only for abuse of ... discretion"; if a ruling constitutes such abuse, it is then reviewed for harmless error); *United States v. Jiminez Lopez*, 873 F.2d 769, 771 (5th Cir.1989). "[T]he test for harmless error in this context is 'whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the ... [contested] evidence [excluded]'." *United States v. Gomez*, 900 F.2d 43, 45 (5th Cir.1990) (quotations omitted); *Moody*, 903 F.2d at 329.

However, it is not necessary to determine whether such non-communication was privileged, because of Moody's arguable use of communications with Ford as a "sword" and his failure to object to testimony similar, if not identical, to that in issue. As held in *United States v. Woodall*, 438 F.2d 1317, 1324 (5th Cir.1970) (en banc), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971) (quotation omitted), " 'the privilege ... is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in

the former.' " In addition, the privilege can, of course, be relinquished or lost if privileged communications are admitted without objection. *See, e.g., United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir.1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984).

As stated, the Texas and North Carolina petitions included as assets of the bankruptcy estate Moody's interest in the Seaside Lanes partnership, with a value of $120,000, and his "Interest in 1980 Trust," with a value of $0.00. Beside his signature on both petitions, Moody wrote that the information contained in them had been provided by his attorney, among others, and that he reserved the right to amend.

At the start of trial, Moody invoked the attorney-client privilege for Ford. Thereafter, when he ran out of time in his opening statement, Moody's counsel stated that Revie's would present certain information during his opening.[11] Revie's attorney then proceeded, *inter alia*, to attack Ford, stating, among other things, that she "bungled and botched Mr. Moody['s] bankruptcy from beginning to end"; that Ford told Revie to "put ... every conceivable interest that Shearn Moody may have in property [on the schedule] ... and we will let the bankruptcy sort it out later"; and that "the scheduling of the property resulted essentially from ... Ford's decision to put it in, not ... Revie's, not ... Moody['s] ..., and, in fact, as you are going to see, as the bankruptcy progressed, [Moody] had no earthly idea what was going on in this case for the most part other than what he was told by ... Revie." There was no objection by Moody's attorney, even though, *inter alia*, it is arguable that communications between Ford and Revie, Moody's employee acting for Moody, were privileged. *See, e.g., Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985). At the very least, based upon the opening statement, the privilege was arguably being used as a sword. And, as reflected in part in note 9, *supra*, the attacks by Revie's and Moody's attorneys continued dur-

---

**11.** Defendants' counsel worked closely together throughout the proceeding.

ing their cross-examination of Ford and closing arguments.

It is also arguable that the privilege was lost during Ford's testimony, prior to the contested testimony, when, concerning listing the partnership on the petition, she responded "no", without objection, when asked by the government whether "at any time did Mr. Moody object to your handling Seaside Lanes in this manner." Furthermore, shortly before, Moody did not object when Ford also responded "no" when asked whether "at any time did Mr. Moody instruct you that you had incorrectly filled out the bankruptcy petition." It was not until later, when Ford was asked whether, after refiling in North Carolina, Moody told her that she had incorrectly described Seaside Lanes as part of the estate, that Moody's counsel objected. The court denied the objection. By then, the information sought had already been twice presented without objection. Later, and over objection, the court allowed Ford to answer ("no"), when asked if she had been told "by anyone" that Seaside Lanes or the 1980 Trust had been incorrectly listed as an asset of the bankruptcy estate.[12]

 At the very least, even assuming that the contested testimony was privileged, it is arguable that there was no error ("abuse of discretion"), because of Moody's use of the privilege as a sword and the admission, without objection, of testimony similar to that claimed privileged. However, it is not necessary to decide whether there was error, because, as stated, more than error is required; a substantial right must be affected. Even assuming error, we find, in light of the other evidence, and the attacks on Ford, and the admission, without objection, of communications between her and Moody, that a substantial right was not affected; we find that Moody would have been found

guilty beyond a reasonable doubt even if the evidence in issue had been excluded. Therefore, even if there was error, it is not reversible.

### III.

Accordingly, the convictions on both Counts are

AFFIRMED.

---

**12.** The court sustained a similar objection. After opining both that the 1980 Trust was revocable and that it was therefore an asset of the bankruptcy estate, Ford answered "yes" when asked whether she had communicated that opinion to Moody and Revie. Moody's attorney objected on the basis of the privilege; and after an extended colloquy outside the presence of

the jury, the court sustained the objection, but denied Moody's motion for a mistrial. Because of concerns by Moody's counsel that an explanation of the ruling to the jury would underscore the harm that he felt had been done, he asked the court to only instruct the jury that the objection had been sustained, which was the procedure followed by the court.