43 F.3d 1468
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joel C. CHAMBRON, Defendant-Appellant.
 No. 93-5819.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 11, 1994.
Decided Nov. 16, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert N. Maletz, Senior District Judge. (CR-93-15-MJG)
 Donald Henry Feige, Baltimore, MD, for appellant.
 Lynne A. Battaglia, U.S. Atty., Dale P. Kelberman, Asst. U.S. Atty., Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before WILKINS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Joel C. Chambron appeals his criminal convictions for bankruptcy fraud and money laundering. Finding no error, we affirm.
 
 
 2
 Chambron was convicted on a seven count indictment in January 1993.[1] The first charge was for conspiring with co-defendant Anton Schmidt from October 1990 to the date of the indictment to commit an offense against the United States in violation of 18 U.S.C. Sec. 371 (1988)[2]; count two charged Defendants with concealing from creditors of Anton Motors, Inc., property belonging to the estate of the debtor Anton Motors, Inc., from approximately January 15, 1991, in violation of 18 U.S.C. Sec. 152; and counts three A through three E charged five counts of money laundering on December 28, 1990, in violation of 18 U.S.C.A. Sec. 1957 (West Supp.1994). (J.A. 13-27).
 
 
 3
 The charges arose out of the bankruptcy of an automobile dealership, Anton Motors, Inc. (Motors). Motors was a Maryland corporation and a wholly owned subsidiary of Schmidt Enterprises, Inc. Chambron's co-defendant, Anton Schmidt, was the president and sole stockholder of both Motors and Schmidt Enterprises. Chambron was the controller of Motors and was responsible for the financial affairs of the dealership.
 
 
 4
 The Government's evidence showed that during the summer of 1990, Anton Motors began to experience financial problems related to slow sales and significant liabilities to creditors, including several banks. Security Pacific, a bank, was one of Motors's principal creditors. Motors "bounced" a series of checks to Security Pacific, which were repayment on Motors's line of credit. In October 1990, Chambron and Schmidt directed one of their employees to open an addi tional bank account in the name of Anton Motors at Frederick Bank & Trust Co. Schmidt, Chambron, and the employee were signatories on the account. Subsequent to opening the account, the employee travelled to Frederick several times a week to deposit into the account checks payable to Motors.
 
 
 5
 During November and December 1990, Schmidt and Chambron instructed the employee to obtain treasurer's checks from Fredericktown Bank & Trust on the Motors account. Around the same time, Schmidt and Chambron arranged to have numerous cars moved from the dealership lot in the middle of the night, concealing the cars from Motors's creditors.
 
 
 6
 Soon thereafter, Security Pacific essentially took over the dealership to ensure payments of Motors's debt. Security Pacific representatives conducted an inventory and discovered that the dealership was unable to account for vehicles Security Pacific financed. Subsequently, Security Pacific filed suit against Motors on December 11, 1990, seeking to recover funds due and to obtain injunctive relief. On December 13, 1990, Motors filed for bankruptcy under Chapter 11 of the Bankruptcy Code.
 
 
 7
 On December 28, 1990, Chambron opened a bank account in the name of Schmidt Enterprises, Inc., at Norstar Bank in Williamsville, New York. Schmidt and Chambron transferred a series of treasurer's checks from the Motors account at Frederick Bank & Trust to Norstar Bank. Four checks drawn on the Fredericktown Bank & Trust account payable to Schmidt, a check payable to Chambron, and a check payable to A & R Autobody were deposited in the Norstar account.[3] In addition, another bank account was opened on behalf of Motors at NCNB in North Carolina.
 
 
 8
 Motors filed a Statement of Financial Affairs with the bankruptcy court on January 15, 1991; the statement was signed by Schmidt. The statement omitted any reference to Motors's accounts at Fredericktown Bank & Trust, the Schmidt Enterprises account at Norstar Bank, or the NCNB account.[4]
 
 
 9
 Chambron filed several pretrial motions, including a motion in limine seeking to preclude the Government from introducing evidence of any actions taken before the filing of bankruptcy.[5] The trial judge denied the motion. The case was tried to a jury, which found Chambron guilty of conspiracy, bankruptcy fraud, and five counts of money laundering. The jury was unable to agree upon a verdict as to two tax counts; the trial court declared a mistrial as to these two counts.
 
 
 10
 The court sentenced Chambron to forty-six months imprisonment on each count, to run concurrently. The court also imposed a special assessment of $350.00. Chambron noted a timely appeal.
 
 
 11
 Chambron filed an emergency motion for a stay of his sentence in this Court. The motion was denied.
 
 
 12
 Chambron claims in this appeal that because he and Schmidt did not contemplate filing bankruptcy until December 12, 1990, no basis existed for admitting evidence of conduct that occurred prior to that date. The acts that the Government introduced included evidence that during October and November 1990, Chambron and Schmidt caused numerous vehicles to be removed from the premises of Motors, and that the Defendants opened an account at Fredericktown Bank & Trust with money from Motors and drew various checks against the account.
 
 
 13
 Trial courts are afforded wide latitude in deciding what evidence is admissible, and such determinations are reviewed on appeal for a "clear abuse of discretion." United States v. Abel, 469 U.S. 45 (1984); Bituminous Constr. Inc. v. Rucker Enters., Inc., 816 F.2d 965, 968 (4th Cir.1987). The jury could reasonably have concluded that the activities undertaken by Chambron and Schmidt prior to filing the bankruptcy petition were to conceal Motors's assets from the creditors of Motors in contemplation of that bankruptcy.[6]
 
 
 14
 As the member of this panel noted in considering Chambron's motion for a stay of his sentence pending appeal, there is substantial authority for the principle that "concealment" is a continuing offense. Thus, acts done prior to the filing of bankruptcy are relevant and probative. "The crime is concealment of assets from the specified court officers or creditors, and the acts can be done before, as well as after bankruptcy." Sultan v. United States, 249 F.2d 385, 386 (5th Cir.1957). "Concealment is a continuing offense and may be proven by evidence establishing an ongoing course of conduct." United States v. Moody, 923 F.2d 341, 351 (5th Cir.1991) (citation omitted).
 
 
 15
 Chambron also claims that the challenged evidence should have been excluded as evidence of "other crimes, wrongs or acts" pursuant to Rule 404(b) of the Federal Rules of Evidence. However, the challenged evidence was an integral part of the charged offense, not an extrinsic offense. Further, evidence is admissible under Rule 404(b) if it is: (1) relevant to an issue other than character, (2) necessary, and (3) reliable. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). The evidence at issue here clearly meets these requirements. Further, the evidence was more probative than prejudicial, so exclusion under Fed.R.Evid. 403 was not warranted. Consequently, the trial court did not abuse its discretion in admitting the evidence.
 
 
 16
 Next, Chambron claims that the trial court erred in finding that the evidence was sufficient to prove the money laundering counts. Title 18 U.S.C.A. Sec. 1957 provides in pertinent part:
 
 
 17
 Whoever, ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value of greater than $10,000 and is derived from specified unlawful activity shall be [guilty of an offense].[7]
 
 
 18
 According to the indictment, the money laundering counts occurred on or about December 28, 1990. This was the day Chambron opened a bank account at Norstar Bank and deposited five checks drawn upon the Motors account at Fredericktown Bank & Trust. The five money laundering counts alleged that the deposited funds were the proceeds of a bankruptcy fraud, but never further identified the bankruptcy fraud. Chambron contends that because count two charged a bankruptcy fraud that occurred on January 15, 1991,[8] the bankruptcy fraud which allegedly generated the proceeds deposited on December 28, 1990, had to be the proceeds of a different fraud than that alleged in count two. He states that the funds deposited on December 28, 1990, could not have been the proceeds of a crime which had not yet been committed. He further claims that no evidence was introduced that would have permitted a fact finder to find that the funds deposited on December 28, 1990, were the proceeds of another bankruptcy fraud. Chambron again contends that he did not contemplate filing for bankruptcy before December 12, 1990. Thus, he could not have committed bankruptcy fraud before then.
 
 
 19
 Chambron correctly states that it was incumbent upon the Government to prove that the funds deposited were the proceeds of an unlawful act. United States v. Levine, 970 F.2d 681, 686 (10th Cir.1992). In considering a challenge to the sufficiency of the evidence, however, this Court must view the evidence in the light most favorable to the Government. Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 20
 As stated above, the unlawful act of concealing assets from specified court officers or creditors, which constitutes bankruptcy fraud, can be done before as well as after bankruptcy. United States v. Moody, 923 F.2d at 351; Sultan v. United States, 249 F.2d at 386. Count one of the indictment charged Chambron with conspiring to commit bankruptcy fraud from October 1990. The diverted assets that were initially deposited in the Fredericktown account came from an unlawful source because they were the proceeds of the bankruptcy fraud that was begun before the filing of the bankruptcy petition. See Levine, 970 F.2d at 686. Viewing this evidence in the light most favorable to the Government, there was sufficient evidence to find Chambron guilty of money laundering when he transferred funds from the Fredericktown account to the Norstar account.
 
 
 21
 Therefore, we affirm Chambron's conviction. We deny Chambron's motion, based on an allegation of ineffective assistance of counsel, to appoint substitute counsel on appeal. A claim of ineffective assistance is not cognizable unless the record plainly reflects that counsel's performance was inadequate, and this record does not so reflect. See United States v. Fisher, 477 F.2d 300, 302 (4th Cir.1973). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Anton Schmidt, Chambron's co-defendant, pled guilty to one count of conspiracy and one count of money laundering
 
 
 [2]
 The specific offense was bankruptcy fraud in violation of 18 U.S.C. Sec. 152 (1988)
 
 
 [3]
 The four checks payable to Schmidt and the one check payable to Chambron that were drawn upon the Fredericktown Bank & Trust account and deposited into the Norstar account formed the basis for the money laundering counts, which alleged that these checks were the proceeds of a bankruptcy fraud
 
 
 [4]
 The failure to list the Fredericktown Bank & Trust and the Norstar accounts formed the primary basis for the bankruptcy fraud count
 
 
 [5]
 Specifically, Chambron sought to preclude evidence of the creation of the Fredericktown bank account and the midnight movement of the cars from the dealership
 
 
 [6]
 The Statement of Financial Affairs expressly required the disclosure of: (1) Bank Accounts During the Past Two Years (1989-1990); and (2) Withdrawals by any Officer of the Company During the Year Immediately Preceding the Filing of the Original Petition. (J.A. 129). The responses to both of these questions were false because the Statement omitted any reference to the Fredericktown, Norstar, or NCNB bank accounts as well as the payments to Chambron and Schmidt made through those accounts. Proving that the statement was false required the introduction of evidence concerning activities prior to the filing of the bankruptcy petition
 
 
 [7]
 Criminally derived property is "property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C.A. Sec. 1957(f)(2). "Specified unlawful activity" includes the crime of bankruptcy fraud. 18 U.S.C.A. Sec. 1956(c)(7)(D) (West Supp.1994)
 
 
 [8]
 The Statement of Financial Affairs was filed with the Bankruptcy court on January 15, 1991